DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Telephone:  (914) 381-7400
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.

*Proposed Counsel to the Debtors and Debtors-in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 Case |
| SOUND VISION CARE, INC, | Case No.: 25-72421 (MEW) |
| Debtors.[1] | (Jointly Administered) |

---

### DECLARATION OF JEFFERY WILLIAMS JR. IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY PLEADINGS

I, Jeffery Williams, Jr., hereby declare under penalty of perjury:

1.    I am the sole owner of Sound Vision Care, Inc. ("SVC") and the other debtors and debtors-in-possession (collectively, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases").[2] I submit this declaration (this "Declaration") pursuant to Rule 1007-4 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules") in support of the Debtors' motions and applications filed contemporaneously herewith (the "First Day Pleadings").

---

[1]    The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693), (ii) SVC of Coram, LLC (7727), (iii) SVC of East Setauket, LLC (4510), (iv) SVC of Riverhead, LLC (9996), (v) SVC of Southold, LLC (4232), (vi) SVC of Fresh Meadows, LLC (4333), (vii) SVC of Manhasset, LLC (7234). The Debtors' mailing address is 1224 Ostrander Avenue Riverhead, NY 11901.

[2]    Capitalized terms used but not defined in this Declaration shall have the meanings set forth in the relevant First Day Pleading.

2.      I am the Debtors' primary operator.  Each of the Debtors is either a corporation or a limited liability company organized and existing under the laws of the State of New York.

3.      The Debtors operate retail optician and eyeglass boutiques in Long Island and New York City and provide optometry services to the public. The Debtors currently operate eight (8) locations, and its headquarters is at its location in Riverhead, New York.

4.      I studied Optometry and is a graduate of The Ohio State University and am a Board Certified Optometrist by The American Board of Optometry and The National Board of Optometric Examiners.

5.      On June 23, 2025 (the "Petition Date"), in order to consummate a restructuring of the Debtors' business, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

6.      The Debtors remain in possession of their assets and manage their business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      In my capacity as owner, I am familiar with the Debtors' day-to-day operations, financial condition, business affairs, and books and records. I submit this declaration (the "Declaration") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these Chapter 11 Cases, and in support of (a) the Debtors' petition for relief under chapter 11 the Bankruptcy Code, and (b) the various First Day Pleadings.

8.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and knowledge of the Debtors' operations and financial condition, and information provided to me

by management, advisors, or other representatives of the Debtors. If called as a witness, I would testify consistently with the facts set forth in this Declaration.

9.      To familiarize the Court with the Debtors and the relief the Debtors seeks early in this Chapter 11 Case, this Declaration is organized into two sections. Section I provides an overview of the Debtors' operations and capital structure. Section II sets forth the relevant facts in support of each of the First Day Pleadings filed in connection with this Chapter 11 Case, which the Debtors believe are critical to administering these Chapter 11 Cases and preserving and maximizing the value of the Debtors' estates.

## I. Overview of the Debtors' Business

### A. The Debtors' Secured Debt

10.      Prior to the Petition Date, the Debtors entered into a number of loan transactions. Several of these loan transactions were with the Small Business Administration (the "SBA"), pursuant to which the Debtors granted the SBA a first priority lien on substantially all of the Debtors' assets, including its cash (the "Cash Collateral"). A list of the various loan transactions are set forth on **Exhibit B** hereto.  A Schedule of UCC-1 Filings is attached hereto as **Exhibit C**.

11.      Following the Debtors' agreements with the SBA, the Debtors also entered into several additional agreements with multiple merchant cash advance lenders (collectively, the "Other Secured Parties" and together with the SBA, the "Secured Creditors"). The Other Secured Parties have similarly filed UCC-1 financing statements regarding the Debtors. The Debtors do not, however, believe the Other Secured Parties' liens are valid and/or perfected and/or constitute an interest in the Debtors' Cash Collateral and intend to dispute the claims of the Other Secured Creditors.

A.    **Events Leading to the Chapter 11 Cases**

12.    The Debtors expended rapidly by opening and/or acquiring a number of retail optical locations. On account of the worldwide pandemic, however, the Debtors were forced to close all of their retail locations and were only able to see patients on a very limited, if any, basis. The Debtors simultaneously faced significant debt obligations on account of their expansion. As a result, the Debtors subsequently closed a number of stores permanently.  To maintain operations at the remaining locations, the Debtors entered into a number of loan transactions, with the SBA, and the Other Secured Parties. Eventually, the Debtors were no longer able to service these obligations as they came due.  Subsequently, numerous lenders attempted to seize assets from the Debtors or to take other collection actions. As a result, to cease such actions and to obtain a breathing spell to organize their debts and construct a plan of reorganization, the Debtors commenced these Chapter 11 Cases.

II. **Summary of First Day Pleadings**

13.    The Debtors filed several First Day Pleadings following the filing of their Chapter 11 petitions. The Debtors request that each of the First Day Pleadings be granted to ensure the success of these Chapter 11 Cases.

14.    For more detailed information regarding each First Day Pleading, the Debtors respectfully refer the Court to the respective First Day Pleading. In the event that this Declaration and any provision of any First Day Pleading are inconsistent, the terms of the First Day Pleading shall control.

A.    **Utilities Motion**

15.    By the Utilities Motion, the Debtors seek entry of interim and final orders (a) prohibiting utilities from altering, refusing, or discontinuing service to the Debtors,

4

(b) approving the Debtors' proposed form of adequate assurance of payment, and (c) establishing procedures for resolving objections to the Debtors' proposed form of adequate assurance of payment.

16.     In the ordinary course of business, the Debtors obtain electricity, water, telephone services, internet, garbage collection, gas, and other similar services (collectively, the "Utility Services") from a number of utility providers (the "Utility Providers").

17.     A list of the names and addresses of the Utility Providers, and the recent approximate amounts owed per month is attached to the Utilities Motion as **Exhibit C**. On average, the Debtors collectively pay approximately $6,800.00 each month on Utility Services. The Debtors have historically made full and timely payments for the Utility Services to Utility Providers and there are not significant prepetition amounts owing to Utility Providers.

18.     During the pendency of these Chapter 11 Cases, the Debtors intend to pay all Utility Providers, subject to the granting of the Cash Collateral Motion, in a timely manner consistent with the Debtors' ordinary course of business and customary payment terms.

19.     Uninterrupted Utility Services are essential to the Debtors' continued business operations and successful reorganization. If the Utility Providers are permitted to suspend or discontinue service to the Debtors, the Debtors would be unable to furnish their services to their customers. Furthermore, discontinuation of the Utility Services would hamper the Debtors' ability to generate revenues, which would hinder the Debtors' ability to reorganize, and also degrade the value of the Debtors' estates. Therefore, I believe that it is critical that this Court grant the relief sought in the Utilities Motion.

20.     As adequate protection, the Debtors propose depositing fifty-percent (50%) of one month's worth of Utility Service payments, or $3,200.00 (an "Adequate Assurance Deposit"). I

5

believe that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services, contingent on the granting of the Cash Collateral Motion, constitutes adequate protection under the Bankruptcy Code.

21.    Furthermore, the Debtors propose certain procedures, discussed in detail in the Utilities Motion, which would allow a Utility Provider to request additional adequate protection if it believes that there are circumstances warranting greater protection. I believe that the Utilities Motion is in the best interest of the Debtors, their estates, and all parties in interest. Therefore, I respectfully ask this Court to grant the relief sought in the Utilities Motion.

### B.    Wages Motion

22.    The Debtors employ approximately thirty-six (36) hourly Personnel (some of whom additionally receive commissions based on sales) and five (5) salaried Personnel. The Debtors' gross average aggregate biweekly compensation to Personnel for wages and salaries ("Personnel Wages") typically varies depending on hours worked and commissions paid but is generally between approximately $70,000.00 to 90,000.00.   The Debtors estimate that the aggregate amount of accrued prepetition wages, salaries, overtime pay, and other cash compensation, including taxes, that remains unpaid to the Personnel as of the Petition Date is approximately $64,996.98 (the "Unpaid Personnel Compensation").[3]

23.    In addition, the Debtors provide Personnel with: (i) healthcare and other related coverage; (ii) certain leave and vacation benefits; (iii) a 401(k) plan in which eligible Personnel can participate; (iv) COBRA medical coverage; (v) a flexible spending plan; (vi) a worker's compensation insurance program (collectively, the "Benefit Programs"). There are no material amounts outstanding under these various programs as of the Petition Date.

---

[3]    The Debtors are not seeking to pay any prepetition amounts to me at this time but are seeking authorization to pay me in the ordinary course post-petition.

24.     By the Wages Motion, the Debtors seek entry of interim and final orders (a) authorizing, but not requiring, the Debtors to pay prepetition claims for, among other things, the Unpaid Personnel Compensation, and to pay ordinary and customary wages and salaries, federal and state withholding taxes, payroll taxes, and related administration obligations to third parties in connection therewith, which are paid by the Debtors in the ordinary course of business; (b) authorizing, but not requiring, the Debtors to continue its Benefits Programs and related administration obligations to third parties in connection therewith; (c) continue to retain and pay Wolf's Edge Integrators, who provides the Debtors with COO and director services, and (d) requiring banks and financial institutions to process, honor, and pay any checks presented by the Debtors' employees, and directing the banks and financial institutions to honor all related fund transfer requests made by the Debtor.

25.     The Debtors cannot operate without their Personnel. Each of the Personnel is critical to the uninterrupted operation of the Debtors' service-oriented business as they have familiarity with not only the Debtors' business operations, but also with the Debtors' customers. Failure to maintain the various Benefit Programs will result in the loss of key Personnel, which will negatively impact the quality and scope of services provided and, in turn, could jeopardize the Debtors' ability to reorganize. I also believe that the Debtors' ability to maintain Personnel in the ordinary course of business is vital to the ongoing reorganization efforts.

26.     Therefore, I respectfully ask this Court to grant the relief sought in the Wages Motion.

### C.     Cash Management Motion

27.     By the Cash Management Motion, the Debtors seek entry of interim and final orders (a) authorizing the Debtors to continue operating its centralized cash management system (the

"Cash Management System") and bank accounts (the "Bank Accounts") located at Wells Fargo Bank, N.A. (the "Bank") or modify the Cash Management System and/or Bank Accounts if and when directed by the Bank, (b) granting the Debtors a waiver of (i) the requirements of section 345(b) of the Bankruptcy Code and (ii) certain bank account and related requirements of the Office of the United States Trustee (the "U.S. Trustee"), and (c) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to any reasonable changes to the Cash Management System that the Debtors may implement).

28.     In addition, as part of the relief requested in the Cash Management Motion, and to ensure that its transition into and out of Chapter 11 is as smooth as possible, the Debtors seek entry of orders authorizing the Debtors to, among other things: (a) maintain and continue using the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as are currently employed, (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, automatic clearing house transfers, drafts, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts, (c) pay ordinary course bank fees in connection with the Bank Accounts, (d) perform its obligations under the documents and agreements governing the Bank Accounts, and (e) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtor in possession, and deeming the Bank Accounts to be "debtor-in-possession" accounts.

29.     To the extent that the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or certain bank account and related requirements of the U.S. Trustee, I believe that "cause" exists to waive the requirements of that section. The Debtors are a sophisticated company with a Cash Management System that has the capacity to move funds as

8

necessary to ensure the Debtors' fiscal safety. I believe that strict compliance with section 345(b) of the Code will unduly burden the Debtors with administrative expenses and difficulties.

30.     I also believe that the Debtors should be entitled to continue making Intercompany Transactions. All transactions between the Debtors and non-debtors will be recorded and the Debtors will maintain records of all such transfers.

31.     The continued use of the Cash Management System and the Bank Accounts during the pendency of this Chapter 11 Cases, including the ability to make Intercompany Transactions, is essential to the Debtors' business operations. The Debtors employ the Cash Management System and Bank Accounts to maximize efficiencies and the value of their business, and to collect, transfer, and disburse the funds generated by its operation. Using the Cash Management System and Bank Accounts, the Debtors can collect and transfer cash efficiently to satisfy its financial obligations. As a practical matter, it would be extremely burdensome and expensive to establish and maintain a different cash management system and different Bank Accounts for each Debtor. Accordingly, the Debtors request to continue the Cash Management System and the Bank Accounts without disruption. Accordingly, I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtor, their estates, and creditors, and all parties in interest, and I respectfully ask this Court to grant the relief sought in the Cash Management Motion.

**D.     Cash Collateral Motion**

32.     By the Cash Collateral Motion, the Debtors requests the entry of interim and final orders (together, the "Proposed Cash Collateral Orders") (a) authorizing the Debtors to use cash collateral; (b) granting adequate protection; (c) scheduling a final hearing; and (d) granting related relief.

33.   The Debtors are in the process of organizing and reviewing their records with respect to the various Secured Creditors' rights. The Debtors will file, in the near term, an application for CBIZ, Inc., who is assisting the Debtors with this process.  As such, pursuant to the Interim Order, the Debtors seek to maintain the status quo for all parties by having the Court grant valid, enforceable, fully-perfected, security interests (the "Replacement Liens"), to the extent that Pre-Petition Liens were valid, perfected, and enforceable as of the Petition Date, and such Replacement Liens shall be in the same continuing order of priority that existed as of the Petition Date. The Debtors will also operate pursuant to a Budget that will be filed in the near term.  Subject to this Court's approval and an approved budget, the Cash Collateral will be used to fund operating expenses and professional fees, as well as insurance, taxes, and the costs related to this Chapter 11 Cases.

34.   Use of the Cash Collateral is critical to the Debtors' ability to fund its postpetition operations. Without immediate access to the Cash Collateral, the Debtors will be unable to operate, pay employees, or obtain goods and services needed to carry on their operations during the Chapter 11 Cases. I believe that the Interim Order is fair, reasonable, and consistent with the Bankruptcy Code. Granting the Cash Collateral Motion will allow the Debtors to continue the operations necessary to maintain operations, while maintaining the status quo of all Secured Creditors, so that the Debtors may restructure their debt in these Chapter 11 Cases.

35.   Therefore, I respectfully ask this Court to grant the relief sought in the Cash Collateral Motion.

**E.   Ombudsman Motion**

36.   By the Ombudsman Motion, the Debtors seek entry of an order (a) determining that appointment of a patient care ombudsman for the Debtors is not required at this time, and

(b) granting related relief.  I believe that an ombudsman is unnecessary in these Chapter 11 Cases because, among other reasons, (a) the Debtors has a history of providing excellent services and, subject to the Cash Collateral Motion being granted, will have the resources necessary to continue providing a high level of customer care during these Chapter 11 Cases; (b) the Debtors have existing and stringent internal safeguards that adequately protect patients; (c) the Debtors is already subject to regulatory oversight by numerous governmental authorities.

37.     I believe that an ombudsman would not serve the best interests of the Debtors' customers, the Debtors' estates, or any parties in interest in the Chapter 11 Cases. An ombudsman would provide services or supervision that would be duplicative of existing safeguards and would therefore result in additional costs to the Debtors' estates with little additional value.

38.     Therefore, I respectfully ask this Court to grant the relief sought in the Ombudsman Motion.

## I.    PART II - INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007

39.     In addition to the foregoing, Local Bankruptcy Rule 1007-4 of the Local Rules for the Bankruptcy Court for the Eastern District of New York requires certain information related to the Debtors, which is set forth below. The Debtors have recently filed and obtained this Court's approval [ECF Docket Nos. 3 and 11] (the "Schedules Motion and Order"), to file their schedules and statements at a later time. To the extent required, the Debtors will amend this Declaration following the completion of their schedules.

**Local Rule 1007-4(a)(i)-(v)**

40.     The Debtors operate a chain of retail optical stores. The Debtors principal place of business is 1224 Ostrander Avenue, Riverhead, New York 11901. The Debtors are engaged in the operation eye-glass business as set forth above.  The Debtors are not small business debtors within

11

the meaning of Bankruptcy Code section 101(51D) nor are they single asset real estate debtors. No trustee or committee has been appointed in the Chapter 11 Cases.

**Local Rule 1007-4(a)(vi)**

41.    A list of the names and addresses of the Debtors' twenty (20) largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in section 101(31) of the Bankruptcy Code is annexed hereto as **Schedule I**.

**Local Rule 1007-4(a)(vii)**

42.    The Debtors are reviewing their records to determine the number of secured creditors and will file a schedule of such creditors in compliance with the Schedules Motion and Order.

**Local Rule 1007-4(a)(viii)**

43.    The Debtors will file a schedule of their secured creditors, as well as assets and liabilities, in the near term in compliance with the Schedules Motion and Order.

**Local Rule 1007-4(a)(ix)**

44.    There are no publicly held securities of the Debtors.

**Local Rule 1007-4(a)(x)**

45.    None of the Debtors' property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.  The Debtors will submit a list of all suits or proceedings in which the Debtors are named as a party in accordance with the Schedules Order.

**Local Rule 1007-4(a)(xi)**

46.    The Debtors will submit a list of the premises owned, leased, or held under any other arrangement from which the debtor operates its business in compliance with the Schedules Motion and Order.

**Local Rule 1007-4(a)(xii)**

47.    The Debtors' books and records and substantial assets are located at 1224 Ostrander Avenue, Riverhead, New York 11901.

**Local Rule 1007-4(a)(xiii)**

48.    The Debtors will submit a schedule of the nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent in compliance with the Schedules Motion and Order.

**Local Rule 1007-4(a)(xiv)**

49.    The Debtors are currently managed by me, Jeffrey Williams. I am the 100% owner of the Debtors.

**Local Rule 1007-4(a)(xv)**

50.    The Debtors currently have thirty-six (36) employees. The Debtors' estimated payroll to non-manager/non-insider employees for the thirty (30) day period following filing of the Chapter 11 Cases is approximately $140,0 0-$180,000.

**Local Rule 1007-4(xvi)**

51.    The Debtors will file a schedule related to management compensation in accordance with the Schedules Motion and Order. In the near term, the Debtors will not pay any prepetition amounts, or any amounts to management, outside the ordinary course that has not been approved by the Bankruptcy Court.

**Local Rule 1007-4(a)(xvii)**

52.    A schedule, for the thirty (30) day period following the filing of the Chapter 11 Cases of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, will be filed in accordance with the Schedules Motion and Order.

**Local Rules 1007-4(a)(xviii)**

53.    The Debtors intend to file a schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed, in the near term in compliance with the Schedules Motion and Order.

**Local Rules 1007-4(a)(xix)**

54.    A schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed, has been filed along with the Cash Management Motion.

**Conclusion**

55.    The Debtors respectfully request that the orders granting relief requested in the First Day Pleadings be entered. I reserve the right to supplement and/or amend this Declaration with testimony and/or exhibits. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: June 27, 2025

/s/ Jeffrey Williams, Jr.
Jeffrey Williams, Jr.