DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Telephone:  (914) 381-7400
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.

*Hearing Date: June 11, 2026*
*Hearing Time: 10:00 a.m. (EST)*

*Counsel to the Debtors and Debtors in Possessi*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

_____

In re:

SOUND VISION CARE, INC, *et. al*.,

Debtors.[1]

_____ /

Chapter 11 Case

Case No.: 25-72421 (LAS)

(Jointly Administered)

## NOTICE OF HEARING ON DEBTORS' 9019 MOTION

**PLEASE TAKE NOTICE,** that upon the annexed Debtors' Motion (the "Motion") for

Approval of a Stipulation of Settlement (the "Stipulation"), a copy of which is attached to the

Motion as Exhibit "1," the Debtors will move for approval of the Stipulation settling the claims

among Lend Bug LLC, the Debtors and Jeffrey Williams Jr. Pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Motion") before the Honorable Louis A. Scarcella, United

States Bankruptcy Judge for the Eastern District of New York, 290 Federal Plaza, Courtroom 970,

---

[1]    The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693); (ii) SVC of Coram, LLC (7727); (iii) SVC of East Setauket, LLC (4510); (iv) SVC of Riverhead, LLC (9996); (v) SVC of Southold, LLC (4232); (vi) SVC of Fresh Meadows, LLC (4333); (vii) SVC of Manhasset, LLC (7234); and (viii) SVC of Murray Hill[,] LLC. The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

Central Islip, New York 11722 at **10:00 a.m. (EST) on June 11, 2026** for entry of an Order approving the Stipulation.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Frier Application, shall be considered at the hearing and may also be made in writing, filed with the Court on the Court's Electronic Case Filing System at www.ecf.nyeb.uscourts.gov (Login and password required) no later than **June 4, 2026** at **4:00 p.m. (EST).**

PLEASE TAKE FURTHER NOTICE, all attorneys and unrepresented parties are required to register for the hearing(s) at least two (2) business days in advance of the scheduled hearing by using the Court's eCourt Appearances platform: https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. If for some reason you are not able to use the eCourt Appearances platform, you must email the Courtroom Deputy at: las_hearings@nyeb.uscourts.gov at least two (2) business days prior to the hearing and state that a reasonable effort to use the platform has been made. You must include your name, the case number(s), who you represent if you are an attorney, and the date of the hearing. Your email must include in the Re line "I am not able to register using eCourt Appearances." You will then be provided with the dial in / log in information. If you do not have internet access you may call the Courtroom Deputy with this information at (631) 712-6278.

Conduct during audio only hearings:

- Announce your name each time before speaking.
- Speak up and enunciate so that you can be heard and understood.
- Avoid the use of a speaker phone (use a landline, if possible).
- If you are not speaking, keep your phone muted.

Dated: May 14, 2026
      White Plains, New York          Respectfully submitted,

By: /s/ James B. Glucksman
     Robert L. Rattet, Esq.
     James B. Glucksman, Esq.
     Craig M. Price, Esq.
     John D. Molino, Esq.

     DAVIDOFF HUTCHER & CITRON LLP
     120 Bloomingdale Road, Suite 100
     White Plains, New York 10605
     Telephone: (914) 381-7400
     Email: rlr@dhclegal.com
           cmp@dhclegal.com
           jdm@dhclegal.com

     *Counsel to the Debtors*
     *and Debtors in Possession*

DAVIDOFF HUTCHER & CITRON, LLP          HEARING  DATE:  6/11/2026
Attorneys for Debtors                                    @10:00 a.m.
605 Third Avenue
New York, New York 10158
(646) 428-3236

JAMES B. GLUCKSMAN

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                            Chapter 11

SOUND VISION CARE, INC. ET. AL.,                Case No. 25-72421 (LAS)
                                                                 (Jointly administered)

                               Debtors[1].
----------------------------------------------------------x

### DEBTORS' 9019 MOTION TO APPROVE SETTLEMENT
### WITH CAPITAL DOMAIN LLC

TO THE HONORABLE LOUIS A. SCARCELLA, BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this Motion to Approve a Settlement by and between the Debtors, Capital Domain LLC ("Capital

Domain") and Jeffrey Williams Jr. (the "Guarantor") pursuant to the terms set forth in the

Stipulation and Order attached hereto as Exhibit 1 (the "Settlement Agreement"), and respectfully

states as follows:

### PRELIMINARY STATEMENT

1.       By this Motion, the Debtors seek approval of a settlement that fully resolves (a) the

alleged liabilities of the Debtors to Capital Domain under a merchant cash advance agreement with

---

[1]    The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693), (ii) SVC of Coram, LLC (7727), (iii) SVC of East Setauket, LLC (4510), (iv) SVC of Fresh Meadows, LLC (4333), (v) SVC of Manhasset, LLC (7234), (vi) SVC of Riverhead, LLC (9996), (vii) SVC of Southold, LLC (4232), and (viii) SVC of Murray Hill, LLC (8674). The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

the Debtors (the "Capital Domain MCA Agreement"), whereby Capital Domain advanced certain sums as described below to the Debtors, in consideration of the purchase of receivables from the Debtors, (b) all outstanding and disputed issues that may arise between the parties concerning the Debtors' forthcoming plan of reorganization, (c) claims which may asserted by Capital Domain against Guarantor and by Guarantor against Capital Domain, and (d) the Debtors' Chapter 11 cases as a whole. Approval of the settlement will facilitate the ability of the Debtors to promptly emerge from Chapter 11 and thereby greatly benefits the Debtors and all of their creditors.

2. Pursuant to the Settlement Agreement, (a) all pending and potential litigation and claims between Capital Domain, the Debtors and Guarantor in the Chapter 11 cases are resolved, and Capital Domain shall be dismissed from the pending Nature/Extent Proceeding (defined below), and (b) Capital Domain will vote its claims in favor of and affirmatively support any chapter 11 plan of reorganization filed by the Debtors that is consistent with the terms of the Settlement Agreement ("Plan"), with certain exceptions outlined in the Settlement Agreement. This support will assist the Debtors in avoiding a contested Plan confirmation process (as well as potential post-confirmation claims-related litigation with Capital Domain) and the Debtors' expeditious and efficient emergence from Chapter 11 to the benefit of the Debtors and all of their various creditors.

3. Capital Domain will, with certain exceptions outlined in the Settlement Agreement (a) vote its claims in favor of and (b) affirmatively support any chapter 11 plan of reorganization filed by the Debtors that is consistent with the terms of this Settlement Agreement, regardless of the distribution on the Capital Domain Claim as allowed by Paragraph 1 of the Settlement Agreement, which may be de minimus, depending on unrelated developments in the Chapter 11 cases.

4.     The Settlement Agreement is set forth in the Stipulation and Order attached hereto as **Exhibit 1**.  As discussed in more detail below, the Debtors submit that the settlement is in the best interests of the Debtors, all creditors and the estates at large and falls well above the lowest range of reasonableness standard set forth in the prevailing case law in this Circuit. The Debtors therefore request that the Court enter the proposed Stipulation and Order attached hereto as **Exhibit 1** approving the Settlement Agreement.

## JURISDICTION

5.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

6.     The statutory predicates for the relief requested herein are 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019.

## FACTUAL BACKGROUND

7.     On June 23, 2025 (the "Sound Vision Filing Date"), the Debtors, other than SVC of Murray Hill LLC filed the following Chapter 11 petitions (i) Sound Vision Care, Inc. (25-72421), (ii) SVC of Coram, LLC (25-72422), (iii) SVC of East Setauket, LLC (25-72423), (iv) SVC of Fresh Meadows, LLC (25-72424), (v) SVC of Manhasset, LLC (25-72425), (vi) SVC of Riverhead, LLC (25-72426), and (vii) SVC of Southold, LLC (25-72428) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Sound Vision Filings"), and (viii) SVC of Murray Hill LLC filed a voluntary petition on December 17, 2025, Case No. 25-74829 (the "Murray Hill Case") (the "Sound Vision Filings" and the "Murray Hill Case" collectively, where appropriate the "Chapter 11 Cases").

8.    The Debtors have continued as debtors in possession of their property and the management of their business affairs as a debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

9.    The Debtors and other non-debtor parties entered into a Future Receivables Sale and Purchase Agreement (the "MCA Agreement") dated November 8, 2024, under which Capital Domain LLC purchased a portion of Debtors' future receivables in exchange for an upfront payment that Capital Domain would likely to assert is in the amount of $160,000.00 (the "Capital Domain Obligation").

10.    During the 90 day period prior to the Sound Vision Filing Date, the Debtors repaid $43,084.00 to Capital Domain.

11.    The Debtors executed several security agreements to secure the Debtors' payment of the Capital Domain Obligation.

12.    Guarantor individually guaranteed the Capital Domain Obligation.

13.    Capital Domain recorded a UCC Financing Statement in the Office of the Secretary of State, State of New York. The Debtors assert that Capital Domain's claim is unsecured inasmuch as it is junior to the secured claims of U.S. Eagle, Flushing Bank and Bank of America.

14.    The Debtors encountered financial difficulties which resulted in part from the financial stress of performing under MCA Agreements with Capital Domain and other MCA parties.  As a result, the Debtors filed the Chapter 11 Cases.

15.    Capital Domain filed Proof of Claim No. 27 in the Sound Vision Care, Inc. Case in the amount of $114,000.00 (the "Capital Domain Claim Amount"), and identical proofs of claim in the remaining Sound Visions Filings (collectively, the "Capital Domain Claims").

- 4 -

16.     The Debtors assert that it has potential preference claims against Capital Domain in the amount of $43,084.00 for payments within ninety days of the Sound Vision Filing Date (the "Ninety Day Payments").

17.     Capital Domain is likely to assert that the Ninety Day Payments were made in the ordinary course of business or financial affairs of the Debtors and Capital Domain.

18.     The Debtors assert that they have claims under 11 U.S.C. § 549 for avoidable post-petition transfers against Capital Domain in the amount of $7,188.00 for payments and ACH debits made after the Sound Vision Filing Date (the "Post-Petition Payments").

19.     The Debtors have asserted, in the Nature, Extent Proceeding that the Capital Domain MCA Agreement was in fact a disguised loan, and subject to defenses such as usury and unconscionability, as well as equitable subordination.

20.     Capital Domain is likely to assert that the Capital Domain MCA Agreement was in fact a purchase of accounts receivable and the Capital Domain Obligation of the Debtors and Guarantor were valid and subsisting obligations.

21.     Capital Domain has asserted or is likely to assert claims against the Guarantor alleged obligations under the Capital Domain MCA Agreement.

22.     Guarantor is likely to assert claims against and defenses to the alleged obligations under the Capital Domain MCA Agreement.

23.     The Debtors and Guarantor, on the one hand, and Capital Domain on the other (the Debtors, Capital Domain and the Guarantor, collectively, the "Parties") wish to avoid the cost, risk, and expense of further litigation on the Capital Domain Claim and related claims between and among the Debtors, Guarantor and Capital Domain (collectively, the "Contested Claims"), and/or in connection with the plan process in the Chapter 11 cases, and after arms' length

negotiation, the Parties have reached a settlement resolving the Claims on the terms set forth in the attached Stipulation and Order and summarized below.

**TERMS OF SETTLEMENT**

24.     Capital Domain's claim shall be allowed in the amount of $114,000.00 (the "Claim Amount").

25.     The Debtors waive and release all claims for disallowance and/or subordination of the Capital Domain Claim.

26.     Capital Domain, the Debtors and Guarantors will release all claims held against each other, as described in the proposed Stipulation (**Exhibit "1"**), except that Capital Domain shall be allowed a single general unsecured claim in the amount of $114,000.00 in the Debtors' estates.

27.     The Post-Petition Payments will be recouped by means of credit against the first and a portion of the second dividend payment under the Plan.

28.     Capital Domain, as described in detail in the Stipulation (Exhibit "1") will consent to approval of any Disclosure Statement that is consistent with the terms of this agreement and transactions contemplated by this Stipulation.

29.     Capital Domain, , as described in detail in the Stipulation (Exhibit "1") will (a) vote its claims in favor of and (b) affirmatively support any chapter 11 plan of reorganization filed by the Debtors that is consistent with the terms of this Settlement Agreement provides the unsecured creditors, including Capital Domain, customary treatment for an unsubordinated and unsecured creditor, regardless of the distribution on the Capital Domain Claim as allowed herein, which may be de minimus, depending on unrelated developments in the Chapter 11 cases.

**RELIEF REQUESTED**

30.     By this Motion, the Debtors seek approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor ... and to any other entity as the court may direct."  Fed. R. Bankr. P. 9019(a).

31.     A bankruptcy court has the authority to approve a settlement or compromise with a debtor under Bankruptcy Rule 9019 where the settlement "is supported by adequate consideration, is 'fair and equitable,' and is in the best interests of the estate." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993).

32.     As the Second Circuit has recognized,

> There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and the judge will not be reversed if the appellate court concludes that the settlement lies with that range.

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

33.     The decision to accept or reject a compromise or settlement is within the sound discretion of the Bankruptcy Court.  *See In re Ionosphere Clubs, Inc.*, 156 B.R. at 426.

34.     The Court's exercise of discretion to approve a settlement is guided by its obligation to:

> [A]pprise himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic

> to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

35.    Thus, in evaluating a proposed settlement, courts within this jurisdiction have applied the *Iridium* factors, which are as follows:

> a.    the balance between the litigation's possibility of success and the settlement's future benefits;
> b.    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay;
> c.    the paramount interests of creditors;
> d.    whether other parties in interest support the settlement;
> e.    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing the settlement;
> f.    the nature and breadth of releases to be obtained by officers and directors; and
> g.    the extent to which the settlement is the product of arm's length bargaining.

*See Motorola, Inc. v. Official Comm. of Unsecured Creditors and JP Morgan Chase Bank, N.A. (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

36.    The Court should also be guided by "the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged...."); *see also In re Lakeland Dev. Corp.*, 48 B.R. 85, 90 (Bankr. D. Minn. 1985) ("[T]he law favors compromise"), *aff'd*, 782 F.2d 1048 (8th Cir. 1985), *cert. denied*, 476 U.S. 1130 (1986).

37.    While a court must make its own considered judgment, it should not substitute its judgment for that of the debtor.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (S.D.N.Y. 1984).

- 8 -

38.     Additionally, section 105(a) of the Bankruptcy Code grants broad authority to a Court to enforce the provisions of the Bankruptcy Code under equitable common law doctrines. Section 105(a) provides, in relevant part, as follows:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105.

39.     The Debtors submit that the settlement set forth in the Settlement Agreement falls well above the lowest point in the range of reasonableness and represents a fair resolution of the claims between the Parties. Approval of the Settlement Agreement eliminates any further litigation between the Parties and facilitates the Debtors' emergence from Chapter 11. Absent the settlement, the Chapter 11 Cases will be burdened with significant additional cost, delay, risk and uncertainty.

40.     The Settlement Agreement was negotiated at arms' length, by parties represented by competent and experienced counsel.  The Debtors submit that approval of the Settlement Agreement is in the best interest of the Debtors, their creditors and all other parties in interest.

41.     Accordingly, the Debtors submit that the terms contained in the Settlement Agreement are both reasonable and in the best interests of creditors and the estates at large and should therefore be approved.

## NOTICE

42.    The Debtors submit that it has appropriately served notice of this Motion upon all parties in interest entitled to notice pursuant to Bankruptcy Rule 2002, and upon the creditors included on the list filed pursuant to Rule 1007(d), and that such notice was appropriate under the circumstances.

**WHEREFORE,** the Debtors respectfully request that the Court enter the Order docketed approving the Settlement Agreement together with such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 14, 2026

**DAVIDOFF HUTCHER & CITRON LLP**

By:  */s/ J*ames B. Glucksman_____
     Robert L. Rattet
     James B. Glucksman

605 Third Avenue
New York, New York 10158
Telephone:   (914) 381-7400
Email:      rlr@dhclegal.com
      jbg@dhclegal.com

*Bankruptcy Counsel to the Debtors*
*and Debtors in Possession*

EXHIBIT "1"

DAVIDOFF HUTCHER & CITRON, LLP
Attorneys for  Sound Vision Care Inc. et. al.
605 Third Avenue
New York, New York 10158
(646) 428-3236

JAMES B. GLUCKSMAN

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                          Chapter 11

SOUND VISION CARE, INC. ET. AL.,                 Case No. 25-72421 (LAS)
                                                                (Jointly Administered)

                                              Debtors[1].
-----------------------------------------------------------------x

### STIPULATION AND ORDER SETTLING CLAIM OF CAPITALDOMAIN LLC AGAINST THE DEBTORS, NON-DEBTORS CORPORATION AND GUARANTOR JEFFREY WILLIAMS

**WHEREAS**, on June 23, 2025 (the "Sound Vision Filing Date"), the Debtors, other than

SVC of Murray Hill LLC filed the following Chapter 11 petitions (i) Sound Vision Care, Inc. (25-

72421), (ii) SVC of Coram, LLC (25-72422), (iii) SVC of East Setauket, LLC (25-72423), (iv)

SVC of Fresh Meadows, LLC (25-72424), (v) SVC of Manhasset, LLC (25-72425), (vi) SVC of

Riverhead, LLC (25-72426), and (vii) SVC of Southold, LLC (25-72428) filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code (the "Sound Vision Filings"), and (viii) SVC

of Murray Hill LLC filed a voluntary petition on December 17, 2025, Case No. 25-74829 (the

"Murray Hill Case") (the "Sound Vision Filings" and the "Murray Hill Case" collectively, where

appropriate the "Chapter 11 Cases").

---

[1]     The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693), (ii) SVC of Coram, LLC (7727), (iii) SVC of East Setauket, LLC (4510), (iv) SVC of Fresh Meadows, LLC (4333), (v) SVC of Manhasset, LLC (7234), (vi) SVC of Riverhead, LLC (9996), (vii) SVC of Southold, LLC (4232), and (viii) SVC of Murray Hill, LLC (8674). The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

**WHEREAS**, the Debtors have continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

**WHEREAS**, CBIZ has been retained as the accountants for the Debtors and are performing certain Financial Advisors functions in the Chapter 11 Cases.

**WHEREAS**, the Debtors operate retail optician and eyeglass boutiques in Long Island and New York City and provide optometry services to the public. The retail optician and eyeglass boutiques supply the community with optometry services.  Debtors operate eight (8) locations, and its headquarters is at its location in Riverhead, New York.

**WHEREAS,** the Debtors are limited liability companies organized in the State of New York. Sound Vision Care, Inc. is a New York corporation.

**WHEREAS,** a detailed description of the Debtors' business, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 case, are set forth in the *Declaration of Jeffery Williams, Jr. Pursuant to Local Bankruptcy Rule 1007-4* [Docket No. 15] (the "Rule 1007-4 Declaration").  The Rule 1007-4 Declaration is incorporated by reference as if set forth herein.

**WHEREAS**, as set forth and annexed to Proof of Claim No. 27 in the Chapter 11 proceeding of Sound Vision Care, Inc. ("Sound Vision Claim No. 27") the Debtors and other non-debtor parties entered into a Future Receivables Sale and Purchase Agreement (the "Agreement") dated April 3, 2024, under which Capital Domain LLC purchased a portion of Defendants' future receivables in exchange for an upfront payment of $190,000.00.

**WHEREAS,** on November 14, 2025 the Debtors filed an Adversary Complaint in the U.S. Bankruptcy Court, Eastern District of New York, Sound Vision Care of New York, Inc. v. Kapitus

LLC et. al., Adv. Proc. No. 25-08112 (Main Case ECF No. 182, Adv. Proc. ECF No. 1, the "Nature, Extent Proceeding"), in which the Debtors alleged claims, *inter alia*, seeking to disallow and expunge any claim filed by parties providing financing under the MCA Agreements, including but not limited to Capital Domain, on various grounds, including usury, unconscionability and in the alternative to subordinate such claims to the claims of other creditors under 11 U.S.C. § 510(c).

**WHEREAS**, Sound Vision Claim No. 27 was filed by Capital Domain LLC on behalf of Capitaldomain LLC a/k/a Capital Domain ("Capital Domain") and two other entities, Panthers Capital LLC and Advance Service Group LLC d/b/a Inadvance Working Capital Now (Sound Vision Claim No. 27").

**WHEREAS**, the Complaint commencing the Nature, Extent Proceeding was served on the address provided in Sound Vision Claim No. 27 on: 1) Capital Domain; 2) Panthers Capital LLC ("Panthers"); and 3) Advance Service Group ("Advance"), all care of CAPITAL DOMAIN LLC, ATTN: JORDAN MORRISON, 749 GATEWAY, STE. G-601, ABILENE, TX 79602.

**WHEREAS**, Anthony Giuliano, Esq. contacted counsel for the Debtors as counsel for Capital Domain in the Nature Extent Proceeding.

**WHEREAS**, Anthony Giuliano, Esq. does not represent Panthers and/or Advance, and Debtors' counsel is moving by separate application for relief under Fed.R.Civ.P. Rule 55(b)(2) against those parties.

**WHEREAS**, after the date of the filing of the petitions, the sum of $7,188.00 was debited by Capital Domain from the Debtors' accounts.

**WHEREAS,** the Debtors executed one or more security agreements to secure the Debtors' payment of the Capital Domain.

**WHEREAS**, Jeffrey Williams Jr. (the "Guarantor") individually guaranteed the Capital Domain Obligation.

**WHEREAS,** Capital Domain recorded a UCC Financing Statement in the Office of the Secretary of State, State of New York. The Debtors assert that Capital Domain's claim is unsecured inasmuch as it is junior to the secured claims of U.S. Eagle, Flushing Bank and BofA.

**WHEREAS**, the Debtors encountered financial difficulties which resulted in part from the financial stress of performing under MCA Agreements with Capital Domain and other MCA parties.  As a result, the Debtors filed the Chapter 11 Cases.

**WHEREAS**, Capital Domain's Claim (the "Capital Domain Claim") was timely filed, in combination with the claims of Panthers and Advance Services, and the parties have agreed on the amount of the debt due to Capital Domain as an unsecured claim (the "Capital Domain Claims") and to allow the amount of $114,600.00 as an unsecured claim. The $114,600.00 amount represents Capital Domain's sole and standalone allowed claim and is not a combined or shared amount with Panthers Capital LLC or Advance Service Group LLC, whose claims are being addressed separately by the Debtors under Fed.R.Civ.P. Rule 55(b)(2).

**WHEREAS,** on December 17, 2025 SVC of Murray Hill LLC filed the Murray Hill Case.

**WHEREAS,** Capital Domain commenced negotiations with the Debtors.

**WHEREAS**, the Debtors assert that it has potential preference claims against Capital Domain in the amount of $43,084.00 for payments within ninety days of the Filing Date (the "Ninety Day Payments").

**WHEREAS**, the Debtors assert that it has claims for avoidance and recovery of the $7,188.00 in post-petitions transfers to the Debtors.

**WHEREAS**, Capital Domain is likely to assert that the Ninety Day Payments were made in the ordinary course of business or financial affairs of the Debtors and Capital Domain.

**WHEREAS**, the Debtors has asserted, in the Nature, Extent Proceeding that the Capital Domain MCA Agreement was in fact a disguised loan, and subject to defenses such as usury and unconscionability, as well as equitable subordination.

**WHEREAS**, Capital Domain is likely to assert that the Capital Domain MCA Agreement was in fact a purchase of accounts receivable and the Capital Domain Obligation of the Debtors and Guarantor were valid and subsisting obligations.

**WHEREAS,** Capital Domain is likely to assert claims against the Guarantor for the Capital Domain Obligation.

**WHEREAS,** Guarantor is likely to assert claims against and defenses to the Capital Domain Obligation.

**WHEREAS**, the Debtors and Guarantor, on the one hand, and Capital Domain on the other (the Debtors, Capital Domain and the Guarantor, collectively, the "Parties") wish to avoid the cost, risk, and expense of further litigation on the Capital Domain Claim and related claims between and among the Debtors, Guarantor and Capital Domain (collectively, the "Claims"), and/or in connection with the plan process in the Chapter 11 case, and after arms' length negotiation, the Parties have reached a settlement resolving the Claims on the terms set forth below.

**NOW, THEREFORE, IN CONSIDERATION OF THE ABOVE STATED PREMISES, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED AND ORDERED AS FOLLOWS:**

1.      Capital Domain's claim shall be treated as amended to the status of an unsecured claim, and said claim shall be allowed as an unsecured claim solely in favor of Capital Domain

LLC in the amount of $114,600.00 (the "Revised Claim Amount"), which amount is not subject to any reduction, contribution, or offset on account of any disposition of the claims of Panthers Capital LLC or Advance Service Group LLC.

2.      Capital Domain agrees to the reduction of its distribution/dividend payable under the Debtors' contemplated plan by $7,188.00, representing the post-petition avoidable transfers, such reduction to be applied first against any initial distribution payable to Capital Domain, with any unrecovered balance applied against subsequent distributions until the full $7,188.00 has been recovered. Upon full recovery of the $7,188.00 by such offset, the Debtors and the Debtors' estates shall have no further claim against Capital Domain on account of the post-petition transfers under 11 U.S.C. § 549, § 542, or otherwise.

3.      The Debtors waive and release all claims for disallowance and/or subordination of the Capital Domain Claim.

4.      The Nature, Extent Proceeding will be dismissed with prejudice as to Capital Domain only pursuant to Fed.R.Civ.P. Rule 41(a)(2).

5.      In consideration of the allowance of the Capital Domain Claim, Capital Domain and its shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, and each of their respective shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities (collectively, the "Capital Domain Releasing Parties"), shall be deemed to hereby irrevocably, fully, finally, and forever release, remise, extinguish, absolve, acquit, and discharge the Debtors and all non-debtor guarantors of any of the obligations to Capital Domain and Guarantor (collectively, the "Obligor Released Parties") and their respective shareholders, partners, members, officers, directors, agents,

heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, and each of their respective shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, of and from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damage, consequential damages, compensatory damages, punitive damages, judgments, extents, executions, claims, counterclaims, and demands related to any transactions between the Debtors, Guarantor, Obligor Released Parties and Capital Domain, known or unknown, foreseen or unforeseen, in law or equity, from the beginning of the world to the date of this release, including any claims the Capital Domain Releasing Parties may have had or claim to have had, on now have or claim to have, or hereafter may have or claim to have, or could have asserted against the Debtors or Guarantor.

6.      In consideration of the terms and conditions of this Stipulation, upon execution of this Stipulation, the Debtors and Guarantor and each of their respective shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, and each of their respective shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, hereby irrevocably, fully, finally, and forever release, remise, extinguish, absolve, acquit, and discharge Capital Domain and its shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities, and each of their respective shareholders, partners, members, officers, directors, agents, heirs, executors, administrators, successors, assigns, affiliates, employees, and affiliated entities (the "Capital Domain Released Parties"), of and from

any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damage, consequential damages, compensatory damages, punitive damages, judgments, extents, executions, claims, counterclaims, and demands whatsoever, known or unknown, foreseen or unforeseen, in law or equity, from the beginning of the world to the date of this release, including any claims the Debtors and/or Guarantor may have had or claim to have had, or now have or claim to have, or hereafter may have or claim to have, or could have asserted.

7.      Capital Domain will consent to approval of any Disclosure Statement that is consistent with the terms of this agreement and transactions contemplated by this Stipulation.

8.      Capital Domain will (a) vote its claims in favor of and (b) not object to any chapter 11 plan of reorganization filed by the Debtors that is consistent with the terms of this Settlement Agreement and provides the unsecured creditors, including Capital Domain, customary treatment for an unsubordinated and unsecured creditor, other than special provisions applicable to creditors with a perfected lien and/or are doing ongoing business with the Debtors, regardless of the distribution on the Capital Domain Claim as allowed by Paragraph 1 of this Stipulation, which may be *de minimis*, depending on unrelated developments in the Chapter 11 cases.

9.      This Settlement Agreement is subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019, pursuant to this Stipulation and Order.

10.     Capital Domain's obligations under the preceding paragraph shall terminate, and Capital Domain's right to vote and to object to any plan or disclosure statement shall be fully restored, upon the occurrence of any of the following: (i) conversion of any of the Chapter 11 Cases to a case under Chapter 7; (ii) the appointment of a Chapter 11 trustee in any of the Chapter 11 Cases; (iii) the dismissal of the Chapter 11 Case of any Debtor (other than the dismissal of a

Debtor not then conducting business operations); (iv) if not already filed, the failure of the Debtors to file a chapter 11 plan within one hundred eighty (180) days from entry of the Order approving this Stipulation; or (v) the filing of any chapter 11 plan that proposes treatment of the Capital Domain Claim less favorable than that provided in this Stipulation.

11.     In the event the Bankruptcy Court declines to approve this Stipulation under Bankruptcy Rule 9019, this Stipulation shall be null and void *ab initio*, the Parties' respective rights, claims, defenses, and counterclaims shall be fully restored to the status quo ante, and nothing contained herein shall be admissible in any subsequent proceeding for any purpose. This provision shall be operative only upon a final denial of approval of this Stipulation.

12. Capital Domain represents and warrants that it is the sole owner of the Capital Domain Claim, that it has not assigned, sold, transferred, hypothecated, or pledged the Capital Domain Claim or any portion thereof to any other person or entity, and that the undersigned has full power and authority to execute this Stipulation on behalf of Capital Domain and to grant the releases contained herein.

**STIPULATED AND AGREED TO**:

Dated: New York, New York
May 12 2026

                    **SOUND VISION CARE, INC. and all Debtors
in Chapter 11 Cases as Defined and all
Non-Debtors Litigation Defendants**

By: *Jeffrey Slaney Williams, Jr.*
Jeffrey Slaney Williams, Jr. (May 12, 2026 15:16:11 EDT)
    Jeffrey Slaney Williams Jr., Managing Member
      And President of Sound Vision Care Inc.

/s/ Anne Penachio
_____
ANNE PENACHIO, ESQ.

*Jeffrey Slaney Williams, Jr.*
Jeffrey Slaney Williams, Jr. (May 12, 2026 15:16:11 EDT)
Jeffrey Slaney Williams Jr., Guarantor

                    **DAVIDOFF HUTCHER & CITRON LLP**

    By: */s/James B. Glucksman*_____
      Robert L. Rattet
      James B. Glucksman

    605 Third Avenue
    New York, New York 10158

Telephone:   (914) 381-7400
Email:       rlr@dhclegal.com
             jbg@dhclegal.com

*Bankruptcy Counsel to the Debtors*
*and Debtor in Possession*

**GIULIANO LAW, PC**
Attorneys for Defendants

*/s/ Anthony F. Giuliano*
Anthony F. Giuliano, Esq.
445 Broadhollow Rd. Ste. 25
Melville, NY 11747
(516) 792-9800

CAPITAL DOMAIN LLC

BY: */s/ Avi Ulano*
    Managing Member