## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK
www.nyeb.uscourts.gov

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 25-72421 (LAS) |
| SOUND VISION CARE, INC., *et. al.*, | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) |

### DEBTORS' FIFTH AMENDED CHAPTER 11 PLAN

THIS PLAN (AS MAY BE AMENDED) WILL BE SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY SECURITIES.

**DAVIDOFF HUTCHER & CITRON LLP**
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
Telephone:    (914) 381-7400
Email: rlr@dhclegal.com
         cmp@dhclegal.com
         jdm@dhclegal.com

Dated:    June 21, 2026

---

[1] The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693); (ii) SVC of Coram, LLC (7727); (iii) SVC of East Setauket, LLC (4510); (iv) SVC of Riverhead, LLC (9996); (v) SVC of Southold, LLC (4232); (vi) SVC of Fresh Meadows, LLC (4333); (vii) SVC of Manhasset, LLC (7234); and (viii) SVC of Murray Hill, LLC (8674). The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

Sound Vision Care, Inc. and the other above captioned debtors and debtors in possession (collectively the "Debtors") propose the following fifth amended Chapter 11 plan of reorganization (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A. Holders of Claims may refer to the Disclosure Statement (as defined below) for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan and transactions contemplated hereby, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

# ARTICLE I.

## DEFINITIONS AND INTERPRETATION

A. **Definitions.** The following terms shall have the respective meanings specified below.

*1.1* **"Accepting Class"** means a Class of votes to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

*1.2* **"Administrative Expense Claim"** means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries, commissions for services and payments for good and other services and leased premises), and (b) Professional Fee Claims.

*1.3* **"Affiliate"** shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

*1.4* **"Allowed"** means, with respect to any Claim, except as otherwise provided herein: (i) a Claim that is evidenced by a Proof of Claim filed by the applicable Bar Date established in the Chapter 11 Cases (or for which Claim under the Plan, the Bankruptcy Code or a Final Order of the Bankruptcy Court, a Proof of Claim explicitly is not or shall not be required to be Filed); (ii) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed that asserts a Claim different in amount or priority from that listed in the Schedules; or (iii) a Claim Allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed by the Claim Objection Deadline; *provided*, *further* that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan. "Allow," "Allowing," and "Allowance," shall have correlative meanings.

1.5    *"Asset"* means all of the rights, title, and interests of the Debtors in and to property of whatever type of nature, including real, personal, mixed, intellectual, tangible, and intangible property.

1.6    *"Avoidance Actions"* means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under Chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code and applicable non-bankruptcy law.

1.7    *"Ballot"* means the form distributed to each holder of a Claim in a Class entitled to vote on the Plan (as set forth herein), on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.8    *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court is determined not to have authorize to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.10    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.11    *"Bar Date"* means, collectively the General Bar Date and the Governmental Bar Date.

1.12    *"BOA"* means Bank of America, N.A.

1.13    *"BOA Loans"* means those loan agreements entered into between the Debtors and BOA.

1.14    *"BOA Secured Claims"* means the Secured Claims of BOA against the Debtors, including but not limited to, the Claims asserted in Proof of Claim No. 20 in the amount of $317,698.62 related to the BOA Loans.

1.15    *"Business Day"* means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

1.16    *"Cash"* means the legal tender of the United States of America.

1.17    *"Causes of Action"* means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, proceeding, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account,

defense, remedy, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), choate or inchoate, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to section 362 of the Bankruptcy Code; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code or any state law fraudulent transfer claim; and (f) any Avoidance Actions.

1.18    "*CBIZ*" means CBIZ Forensic Consulting Group, LLC.

1.19    "*Chapter 11 Cases*" means, with respect to the Debtors, the Debtors' cases under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.20    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.21    "*Claim Objection Deadline*" means the deadline for objecting to Filed Proofs of Claim or scheduled claims, which shall be, unless otherwise extended pursuant to the Plan: (a) the one hundred eightieth (180th) day following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim; or (b) such later date as may be fixed by the Bankruptcy Court; *provided*, *however*, that the Debtors may extend the Claim Objection Deadline for an additional ninety (90) days in its sole discretion upon the filing of a notice with the Bankruptcy Court, with further extensions thereafter permitted after notice and a hearing.

1.22    "*Class*" means any group of Claims classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.23    "*Collateral*" means any Asset of the Estates that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid and has not been avoided under the Bankruptcy Code or applicable non-bankruptcy law.

1.24    "*Company*" means the Debtors.

1.25    "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.26    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.27    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

4

*1.28* ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

*1.29* ***"Debtors"*** has the meaning set forth in the introductory paragraph of the Plan.

*1.30* ***"Disallowed"*** means with respect to a Claim: (a) any Claim, which Claim is disputed under section 7.1 hereof or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed with the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed by the applicable claims bar date; (c) any Claim that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been Filed by the applicable claims bar date; or (d) any Claim that is otherwise disputed by the Debtors or Reorganized Debtors, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim. "Disallow" and "Disallowance" shall have correlative meanings.

*1.31* ***"Disbursing Agent"*** means CBIZ in its capacity as a disbursing agent under <u>Article VI</u> of the Plan.

*1.32* ***"Disclosure Statement"*** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

*1.33* ***"Disclosure Statement Approval Order"*** means the order approving the Disclosure Statement.

*1.34* ***"Distribution Record Date"*** means the Effective Date.

*1.35* ***"Effective Date"*** means, with respect to the Plan, the later of: (i) July 1, 2026, or (ii) the date that is fifteen Business Days after the Confirmation Order is entered; <u>provided that</u>, in each case, SBA approval pursuant to section 9.1(c) of the Plan shall have been obtained on or prior to such date and the provisions of section 9.1 of the Plan shall otherwise govern. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*1.36* ***"Employee Arrangements"*** means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and programs of the Debtors applicable to their respective employees, employer organizations, savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

*1.37* ***"Entity"*** means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy

Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.38    **"Estates"** means the Debtors' estates created under section 541 of the Bankruptcy Code.

1.39    **"Exculpated Parties"** means the parties being exculpated in section 10.6 hereof.

1.40    **"File," "Filed," or "Filing"** means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court.

1.41    **"Final Order"** means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for a new trial reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 69 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

1.42    **"Flushing Bank"** means Flushing Bank.

1.43    **"Flushing Bank Loans"** means those loan agreements entered into between the Debtors and Flushing Bank.

1.44    **"Flushing Bank Secured Claims"** means the Secured Claims of Flushing Bank against the Debtors, including but not limited to, the Claims asserted in Proof of Claim No. 13 in the amount of $505,114.80 related to the Flushing Bank Loans.

1.45    **"General Bar Date"** means October 31, 2025, which is the deadline by which all Persons other than  Governmental Units, were required to have Filed Proofs of Claim against the Debtors.

1.46    **"General Unsecured Claim"** means all Claims that are not a Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Professional Fee Claim, 510(b) Claim, or an Administrative Expense Claim.

1.47    **"Governmental Bar Date"** means December 22, 2025, which is the deadline by which all Governmental Units were required to have Filed Proofs of Claim against the Debtors.

*1.48* **"Governmental Unit"** has the meaning set forth in section 101(27) of the Bankruptcy Code.

*1.49* **"Holder"** means any Person holding (including as successor or assignee pursuant to a valid succession or assignment) a Claim solely in its capacity as such.

*1.50* **"Impaired"** means with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

*1.51* **"Indemnification Obligation"** means any existing or future obligation of the Debtors or a third-party to indemnify current and former directors, officers, members, managers, agents or employees of the Debtors or its principal who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any such capacities, or for or on behalf of the Debtors, whether pursuant to agreement, the Debtors' respective memoranda, articles, or certificates of incorporation or formation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

*1.52* **"Interests"** means any "equity security" in the Debtors, as defined in section 101(16) of the Bankruptcy Code, including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

*1.53* **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

*1.54* **"Local Bankruptcy Rules"** means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Eastern District of New York.

*1.55* **"MCA Claims"** means the Claims of MCA Lenders, which shall be treated as General Unsecured Claims under this Plan.

*1.56* **"MCA Lenders"** means, collectively, and each individually, Advance Service Group, LLC; Capitaldomain LLC; Panthers Capital, LLC d/b/a Panthers Capital; Vex Capital; Quick Funding Group; CFG Merchant Solutions, LLC; Lendbug LLC; Atlas Acquisitions LLC on Behalf of Speedy Capital; White Road Capital, LLC d/b/a GFE Holdings; Square Funding LLC d/b/a Square Advance; Pure Advance; Meged Funding Group Corp. a/k/a Merged Funding; Parkview Advance; EBF Holdings d/b/a Everest Business Funding; Kapitus, LLC; and Kapitus Servicing Inc. as Authorized Sub-Servicing Agent of Kapitus LLC.

*1.57* **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

7

1.58    **"Petition Date"** means the dates these Chapter 11 Cases were commenced as follows: (x) with respect to the Debtors other than Murray Hill, June 23, 2025, and (y) with respect to Murray Hill, December 17, 2025.

1.59    **"Plan"** means this fifth amended Chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.60    **"Plan Contribution"** shall mean a contribution made by Jeffrey S. Williams, Jr., the holder of the Interests, in the total amount of $300,000, payable (a) $100,000 on or shortly after the Effective Date (b) $100,000 within six (6) months of the Effective Date, and (c) $100,000 within one (1) year of the Effective Date, all in consideration of Class 7 retaining their membership Interests. The Plan Contribution shall be used to partially fund the payments required under this Plan. No part of the Plan Contribution may be obtained from a source that would compromise the collateral of the Secured Claims.

1.60    **"Plan Distribution"** means the payment or distribution of consideration to Holders of Allowed Claims under the Plan.

1.61    **"Plan Documents"** means any of the documents, other than the Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

1.62    **"Prerequisite Condition"** shall have the meaning ascribed to such term in section 9.2 hereof.

1.63    **"Priority Non-Tax Claim"** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.64    **"Priority Tax Claim"** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.65    **"Professional"** means an Entity: (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered on or after the Petition Date and before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.66    **"Professional Fee Claims"** means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

*1.67* **"Professional Fee Claims Estimate"** means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with section 2.5 hereof.

*1.68* **"Professional Fee Escrow"** means an escrow account established and funded pursuant to section 2.5 hereof.

*1.69* **"Projections"** means the Projections attached to the Disclosure Statement related to this Plan.

*1.70* **"Proof of Claim"** means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

*1.71* **"Pro Rata Share"** means the proportion that an Allowed Claim or interest in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Closs and other Classes entitled to share in the same recovery as such Class under the Plan.

*1.72* **"Reinstate, Reinstated, or Reinstatement"** means, with respect to Claims, the treatment provided for in section 1124(2) of the Bankruptcy Code.

*1.73* **"Released Parties"** means the parties that are receiving releases in Section 10.5 of this Plan.

*1.74* **"Reorganized Debtors"** means the Debtors, or any successors or assigns thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

*1.75* **"SBA"** is the Small Business Administration.

*1.76* **"SBA Loan"** means the loan agreement entered into between the Debtors and the SBA which is the subject of Proof of Claim Number 12, filed by the SBA on August 19, 2025.

*1.77* **"SBA Secured Claims"** means the Secured Claims of the SBA against the Debtors, including but not limited to, the Claims asserted in Proof of Claim No. 12 in the amount of $2,095,496.88 related to the SBA Loans.

*1.78* "**Schedules**" means the schedules of assets and liabilities, schedule of executory contracts and unexpired leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may have been amended, modified, or supplemented from time to time.

*1.79* "**Secured Claim**" means a Claim: (a) secured by a Lien on Collateral to the extent of the value of such Collateral as (i) set forth in the Plan, (ii) agreed to by the Holder of such Claim and the Debtor, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code exceeds the value of such Claim, or (b) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

*1.80* "**Solicitation Materials**" means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, the Disclosure Statement Approval Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

*1.81* "**Subsequent Condition**" shall have the meaning ascribed to such term in section 9.2 hereof.

*1.82* "**U.S. Trustee**" means the United States Trustee for Region 2.

*1.83* "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

*1.84* "**U.S. Eagle**" means U.S. Eagle Federal Credit Union.

*1.85* "**U.S. Eagle Loans**" means the loans evidenced by the U.S. Eagle Loan Documents.

*1.86* "**U.S. Eagle Loan Documents**" means the following loan documents: (a) Note dated March 1, 2021 executed by the Debtors and non-Debtors SVC RE Holdings, LLC; SVC of the Hamptons, LLC; SVC of Elmhurst, LLC; SVC of Forest Hills One, LLC; SVC of Mastic, LLC; SVC of West Islip, LLC; and SVC of Yorkville, LLC in favor of U.S. Eagle in the principal amount of $4,945,500.00; (b) Security Agreement dated as of March 1, 2021 executed by each of the Debtors and certain non-Debtor affiliates in favor of U.S. Eagle; (c) Mortgage, Assignment of Rents, Security Agreements dated as of March 1, 2021 executed by certain of Debtors' non-Debtor affiliates in favor of U.S. Eagle; (d) Unconditional Guarantee dated as of March 2, 2021 executed by Jeffrey S. Williams, Jr. in favor of U.S. Eagle; and (e) Loan Modification Agreement dated July 28, 2023 among the Debtors and certain of the Debtors' non-Debtor affiliates and U.S. Eagle.

*1.87* "**U.S. Eagle Secured Claims**" means the Secured Claims of U.S. Eagle against the Debtors in respect of the U.S. Eagle Loans, including but not limited to, the Claims asserted in Proof of Claim No. 30 in the amount of $4,982,200.23 plus attorneys' fees, expenses and other charges that accrued and are accruing under the U.S. Eagle Loan Documents from the Petition Date through the Effective Date.

*1.88* "**Voting Deadline**" means the date and time as may be set by the Bankruptcy Court pursuant to the Solicitation Materials.

B.     **Interpretation; Application of Definitions and Rules of Construction**.

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan

and/or the Confirmation Order, as applicable; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claims," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of interest, "Holders of Interests," "Disputed Interests," and the like as and to the extent applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to the Plan or an event occurring shall be deemed to be followed by the words "as applicable"; (xiv) any immaterial effectuating provisions may be interpreted by the Debtors, or after the Effective Date, the Reorganized Debtors, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, *provided* that any effectuating provision that has an economic impact will not be considered "immaterial"; and (xv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. To the extent that the treatment, allowance, or disallowance of any Claims herein is interpreted as a claim objection, the Plan shall be deemed a Claim objection to such Claim.

C.     **Computation of Time**.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

D.     **Reference to Monetary Figures**.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

11

E.     **Reference to the Debtors or the Reorganized Debtors**.

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

F.     **Controlling Document**.

In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

## ARTICLE II.

### ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the classification of Claims set forth in Article III.

2.1.     *Administrative Expense Claims.*

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment, each Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of: (i) the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after such date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, *however*, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, course of dealing or agreement governing, instruments evidencing, or other documents relating to such transactions.

2.2.     *Professional Fee Claims.*

(a)     All Professionals seeking approval by the Bankruptcy Court or Professional Fee Claims shall: (i) File, on or before the date that is forty-five (45) days after the Effective Date (unless extended by the Reorganized Debtors), their respective applications for final allowances of

compensation for services rendered and reimbursement of expenses incurred; and (ii) be paid in full, in Cash, upon allowance of such claims by the Bankruptcy Court, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing such Professional Fee Claims, *provided, however,* that the Professional Fee Claims of DHC and CBIZ shall be paid, over a period not to exceed two years, in accordance with the Debtors' cash flow projections and needs.

(b)    The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 2.3.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable: (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or (ii) such other treatment reasonably acceptable to the Debtors or Reorganized Debtors (as applicable) and consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, that the Debtors and the Reorganized Debtors, as applicable, are authorized in their absolute discretion, but not directed, to prepay all or a portion of any such amounts at any time without penalty or premium. For the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

The Priority Claim of New York State Department of Taxation and Finance ("NYSDTF") in the amount of $132,492.076 shall be paid over two years in equal monthly installments of $6,052.87 (inclusive of 9% interest) until paid in full.  Payment shall be made by check payable to New York State Department of Taxation and Finance and sent to its counsel, Enid Nagler Stuart, Assistant Attorney General, 28 Liberty Street -17th floor, New York, NY 10005. Failure by the Debtor to pay NYSDTF pursuant to the Plan shall be an Event of Default. If the Debtor fails to cure an Event of Default within 15 days of written notice by mail as set forth in Section 12.16 of the Plan, then NYSDTF may act in accordance with non-bankruptcy law to collect the balance of its Claim without further of the Bankruptcy Court.

### 2.4.    *Professional Fee Escrow.*

(a)    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow): (i) shall not be and shall not be deemed property of the Debtors, the Estates, or the Reorganized Debtors, and (ii) shall be held in trust for the Professionals; *provided*,

13

*that*, funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *that*, the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

(b)     If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow from the Estates without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     Any objections to Professional Fee Claims shall be served and Filed no later than fourteen (14) days after Filing of the final applications for compensation or reimbursement.

### 2.5.     *Professional Fee Claims Estimate.*

Each Professional shall estimate in good faith its unpaid Professional Fee Claim for unpaid fees and expenses incurred in rendering services to the Debtors through the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; *provided*, *that*, such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final application for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional through the Effective Date and fund such amount into the Professional Fee Escrow.

### 2.6.     *Post-Effective Date Fees and Expenses.*

(a)     Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash all reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors or the Reorganized Debtors, as applicable.

(b)     Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.     *Classification in General.*

A Claim is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code;

*provided*, *that*, a Claim is placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been satisfied, released, or otherwise settled prior to the Effective Date. All of the potential Classes for the Debtors are set forth herein.

### 3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are: (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | U.S. Eagle Secured Claims | Impaired | Yes |
| 3 | SBA Secured Claims | Impaired | Yes |
| 4 | Flushing Bank Secured Claims | Impaired | Yes |
| 5 | BOA Secured Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Interests | Unimpaired | No (Presumed to Accept) |

### 3.3.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and the Reorganized Debtors' legal and equitable rights with respect to any Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 3.4.    *Elimination of Vacant Classes.*

Any Class of Claims against the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of the Debtors for purposes of voting to accept or reject the Debtors' Plan, and disregarded for purposes of determining whether the Debtors' Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

*3.5.*    ***No Waiver.***

Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Disputed Claim.

*3.6.*    ***Voting Classes; Presumed Acceptance by Non-voting Classes.***

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

*3.7.*    ***Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.***

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims. The Debtors reserve the right to modify the Plan to the extent, if any, confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including other transactions.

## ARTICLE IV.

## TREATMENT OF CLAIMS.

*4.1.*    ***Priority Non-Tax Claims (Class 1).***

(a)    *Classification*: Class 1 consists of Priority Non-Tax Claims.

(b)    *Allowance*: Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable: (i) Cash in an amount equal to such Allowed Priority Non-Tax Claim on, or as soon thereafter as is reasonably practicable, the later of: (a) the Effective Date, to the extent such Claim is an Allowed Priority Non-Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, and (c) the date such Allowed Priority Non-Tax Claim is due and payable in the ordinary course, or (ii) such other treatment reasonably acceptable to the Debtors or Reorganized Debtors (as applicable) and consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, *that*, the Debtors and the Reorganized Debtors, as applicable, are authorized in their absolute discretion, but not directed, to prepay all or a portion of any such amounts at any time without penalty or premium.

(c)    *Treatment*: The legal, equitable, and contractual rights of the Holders of Priority Non-Tax Claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors or the Reorganized Debtors: (i) each such Holder shall receive payment in Cash in an amount equal to such Claim, or (ii) such Holder shall receive such other treatment so as to render

such Holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(d)    *Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to the Plan.

### 4.2    *U.S. Eagle Secured Claims (Class 2).*

(a)    *Classification*: Class 2 consists of the U.S. Eagle Secured Claims. U.S. Eagle is a Secured Claimant holding a Lien on all of the Debtors' Assets.

(b)    *Allowance*: The U.S. Eagle Secured Claims are Allowed in the amount of $4,982,200.23 plus attorneys' fees, expenses and other charges that have accrued and are accruing under the U.S. Eagle Loan Documents from the Petition Date through the Effective Date.

(c)    *Treatment*: To be reinstated, with payments to recommence pursuant to the non-accelerated, prepetition terms of the U.S. Eagle Loan Documents following the Effective Date, *provided, however,* that (i) for that first six-months following Confirmation, the Debtors shall make payments to U.S. Eagle in the amount of not less than $45,457.76, and (ii) after such six month period, the Debtors shall make regular payments to U.S. Eagle in the amount of not less than $55,000 (subject to potential re-amortization of the loan).

The Debtors agree that the application of any and all payments received by U.S. Eagle from the Debtors shall be applied in such order and manner as U.S. Eagle may determine in its sole and absolute discretion, and notwithstanding anything to the contrary in the U.S. Eagle Loan Documents, any and all payment received by U.S. Eagle from the Debtors may be applied in the following order: first, to all costs, expenses, fees, and advances incurred or made by U.S. Eagle in connection with the U.S. Eagle Loan Documents or the Chapter 11 Cases, including, but not limited to, attorneys' fees incurred by U.S. Eagle (together, "U.S. Eagle Advances and Fees"); second, to accrued and unpaid interest; and third, to the unpaid principal balance of the U.S. Eagle Secured Claims. Any and all payments received by U.S. Eagle from the Debtors following Confirmation, shall be applied in accordance with the foregoing order until all U.S. Eagle Advances and Fees have been paid in full. Except as expressly modified by this Plan, the terms and provisions of the U.S. Eagle Loan Documents, including, but not limited to, the Unconditional Guarantee dated as of March 1, 2021 executed by Jeffrey S. Williams, Jr. in favor of U.S. Eagle ("Guaranty"), shall remain in full force and effect and shall continue to govern the rights, obligations, and remedies of the parties. Nothing in this Plan shall release, discharge, impair, or otherwise modify the obligations of any obligor, including of Jeffrey S. Williams, Jr., as guarantor, under the Guaranty, and U.S. Eagle shall retain all rights and remedies under the U.S. Eagle Loan Documents, including, but not limited to, the Guaranty, in accordance with the terms of U.S. Eagle Loan Documents and applicable law.

All amounts outstanding under the U.S. Eagle Loans at the Effective Date that would otherwise be considered unpaid or past due shall not be deemed past due as of the Effective Date; instead, such amounts shall be re-amortized and repaid in accordance with the terms of the U.S. Eagle Loan Documents over the remaining term of the U.S. Eagle Loan Documents. As so re-

17

amortized, U.S. Eagle Loans shall continue to be repaid in accordance with the terms of the U.S. Eagle Loan Documents, and the maturity and other contract terms shall remain in effect until such amounts are paid in full.

(d)      *Impairment and Voting*:  Class 2 is Impaired, and U.S. Eagle is entitled to vote to accept or reject the Plan.

### 4.3      **SBA Secured Claims (Class 3).**

(a)      *Classification*: Class 3 consists of the SBA Secured Claims. The SBA is a Secured Claimant holding a Lien on all of the assets of Sound Vision Care, Inc.

(b)      *Allowance*: The SBA Secured Claims are Allowed in the amount of $2,095,496.88.

(c)      *Treatment*: To be reinstated, with payments to recommence pursuant to the non-accelerated, prepetition terms of the SBA Loan following the Effective Date. All unpaid amounts outstanding under the SBA Loan at the Effective Date necessary to bring the SBA Loan current are to be added to the outstanding principal under such agreements, and the terms of the SBA Loan is to be extended at the contract terms until such amounts are paid in full.

(d)      *Impairment and Voting*:  Class 3 is Impaired, and the SBA is entitled to vote to accept or reject the Plan.

### 4.4      **Flushing Bank Secured Claims (Class 4).**

(a)      *Classification*: Class 4 consists of the Flushing Bank Secured Claims. Flushing Bank is a Secured Claimant holding a Lien on all of the assets of Sound Vision Care, Inc.

(b)      *Allowance*: The Flushing Bank Secured Claims are Allowed in the amount of $505,114.80.

(c)      *Treatment*: To be reinstated, with payments to recommence pursuant to the non-accelerated, prepetition terms of the Flushing Bank Loans following the Effective Date. All unpaid amounts outstanding under the Flushing Bank Loans at the Effective Date necessary to bring the Flushing Bank Loans current are to be added to the outstanding principal under such agreements, and the terms of the Flushing Bank Loans are to be extended at the contract terms until such amounts are paid in full.

(d)      *Impairment and Voting*:  Class 4 is Impaired, and Flushing Bank is entitled to vote to accept or reject the Plan.

### 4.5      **BOA Secured Claims (Class 5).**

(a)      *Classification*: Class 5 consists of the BOA Secured Claims. BOA is a Secured Claimant holding a Lien on all of the assets of Sound Vision Care, Inc.

(b)      *Allowance*: The BOA Secured Claims are Allowed in the amount of $317,698.62, plus attorneys' fees, expenses, and other charges that have accrued and are accruing under the BOA Loan Documents from the Petition Date through the Effective Date.

(c)      *Treatment*: To be reinstated, with payments to recommence pursuant to the non-accelerated, prepetition terms of the BOA Loans following the Effective Date, *provided, however,* that (i) for that first six-months following Confirmation, the Debtors shall make payments to BOA in the amount of not less than $12,000, and (ii) after such six month period, the Debtors shall make regular payments to BOA in the amount of not less than $12,000 per quarter (subject to potential re-amortization of the loan). The Debtors agree that the application of any and all payments received by BOA from the Debtors shall be applied in such order and manner as BOA may determine in its sole and absolute discretion, and notwithstanding anything to the contrary in the BOA Loan Documents, any and all payment received by BOA from the Debtors may be applied in the following order: first, to all costs, expenses, fees, and advances incurred or made by BOA in connection with the BOA Loan Documents or the Chapter 11 Cases, including, but not limited to, attorneys' fees incurred by BOA (together, "BOA Advances and Fees"); second, to accrued and unpaid interest; and third, to the unpaid principal balance of the BOA Secured Claims. Any and all payments received by BOA from the Debtors following Confirmation, shall be applied in accordance with the foregoing order until all BOA Advances and Fees have been paid in full. Except as expressly modified by this Plan, the terms and provisions of the BOA Loan Documents, including, but not limited to, the Guaranty dated as of May 23, 2012 executed by Dr. Jeffrey S. Williams, Jr. in favor of BOA ("BOA Guaranty"), which shall remain in full force and effect and shall continue to govern the rights, obligations, and remedies of the parties. Nothing in this Plan shall release, discharge, impair, or otherwise modify the obligations of any obligor, including of Jeffrey S. Williams, Jr., as guarantor, under the Guaranty, and BOA  shall retain all rights and remedies under the BOA Loan Documents, including, but not limited to, the BOA Guaranty, in accordance with the terms of BOA Loan Documents and applicable law.

(d)      *Impairment and Voting*:  Class 5 is Impaired, and BOA is entitled to vote to accept or reject the Plan.

### 4.6      *General Unsecured Claims (Class 6).*

(a)      *Classification*: Class 6 consists of the General Unsecured Claims and shall include the MCA Claims, but only to the extent Allowed pursuant to section 4.5 above.

(b)      *Allowance*: General Unsecured Claims are Allowed in the amount reflected in Debtors' Schedules filed with the Bankruptcy Court, unless the Claims were scheduled by the Debtors as disputed, contingent, or unliquidated. If the Debtors scheduled a General Unsecured Claim as disputed, contingent, or unliquidated, and the Holder of such Claim did not file a Proof of Claim by the General Bar Date, then such General Unsecured Claim is hereby Disallowed.

If a Proof of Claim was filed by the Holder of a General Unsecured Claim, the Debtors shall have until the Claims Objection Deadline, as may be extended in accordance with the Plan to file an objection to such General Unsecured Claim. If the Debtors do not file an objection within this time period, such General Unsecured Claim shall be Allowed in the amount reflected in the Proof of Claim. If the Debtors do file an objection within such time period, then such General

19

Unsecured Claim shall only be Allowed if the Bankruptcy Court determines the Allowed Amount of such Claim or the Debtors and the Holder of such Claim reach an agreement on the Allowed Amount of such Claim.

(c)    *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, 20% of the pro rata amount of their Claim, with payment of $.05 per dollar of Allowed Claims within 30 days after the Effective Date, and thereafter, semi-annual distributions of $.05 per dollar of Allowed Claims for eighteen months, beginning six (6) months from the Effective Date, in full and final satisfaction of such Holder's General Unsecured Claim.

(d)    *Impairment and Voting*: Class 6 is Impaired, and the Holders of General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

4.7    **Interest in the Debtors (Class 7).**

(a)    *Classification*: Class7 consists of the membership Interests in the Debtors.

(b)    *Treatment*: The Holders of the Debtors' membership Interests shall retain their Interests in the Reorganized Debtors on and after the Effective Date in consideration for the Plan Contribution.

(c)    *Impairment and Voting*: Class 7 is Unimpaired, and the Holders of the Interests in the Debtors are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Interests in the Debtors are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to the Plan.

## <u>ARTICLE V</u>.

## MEANS FOR IMPLEMENTATION.

5.1.    ***Compromise and Settlement of Claims and Controversies.***

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or any distribution to be made on account of such Allowed Claim. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and Holders of Allowed Claims and is fair, equitable, and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final. For the avoidance of doubt, after the Effective Date, the Disbursing Agent will be appointed to facilitate postpetition disbursements.

5.2    *Continued Corporate Existence; Effectuating Documents; Corporate Action.*

(a)    Except as otherwise provided in the Plan or the Plan Documents, the Debtors shall continue to exist after the Effective Date as the Reorganized Debtors as separate corporations, limited liability companies, partnerships, or other form of entities, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the respective certificate of incorporation or bylaws (or other analogous formation documents) in effect before the Effective Date or the New Corporate Governance Documents, as applicable, except to the extent such certificate of incorporation or bylaws (or other analogous formation, constituent, or governance documents) are amended by the Plan or otherwise, and to the extent any such document is amended, such document is deemed to be amended pursuant to the Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law).

(b)    Upon the Effective Date, the Reorganized Debtors shall enter into an agreement appointing CBIZ as the Disbursing Agent, to serve in such capacity until all Plan Distributions have been made pursuant to this Plan.

(c)    Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) the assumption of Executory Contracts and Unexpired Leases as provided herein, (ii) the selection of the managers, directors, or officers for the Reorganized Debtors, and (iii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.

(d)    The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

(e)    Each officer, member of the boards of directors, or manager of the Debtors is (and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, all of which shall be authorized and approved in all respects without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule except for those expressly required pursuant to the Plan.

(f)    All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or by any other stakeholder, and with like effect as though such action had been taken

21

unanimously by the stockholders, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

### 5.3. *Cancellation of Liens.*

(a)    The Debtors shall not take any action to terminate, cancel, or otherwise extinguish the Liens with respect to the Allowed Secured Claims in Classes 2, 3, 4, and 5, which Claims shall each be reinstated under this Plan, unless and until such Claims are either extinguished by their terms or upon agreement of the parties thereto. All other notes, instruments, Liens, judgments, certificates evidencing debt of the Debtors will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims.

(b)    The Debtors shall not take any action to terminate, cancel, or otherwise extinguish the Liens with respect to the Allowed Secured Claims in Classes 2, 3, 4, and 5, which Claims shall be reinstated under this Plan, unless and until such Claims are either extinguished by their terms or upon agreement of the parties thereto. After the Effective Date, the Debtors or the Reorganized Debtors may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and/or other security interests with respect to General Unsecured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests, including, without limitation, UCC-3 termination statements.

### 5.4. *Closing of Chapter 11 Cases.*

After the Effective Date, the Reorganized Debtors shall be authorized, but not directed, to make the appropriate filings in the Bankruptcy Court requesting entry of a final decree closing the Chapter 11 Cases.

### 5.5. *Notice of the Effective Date.*

As soon as practicable after the occurrence of the Effective Date, the Debtors shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 5.6 *Claims of the Secured Claimants*

Notwithstanding anything contained in the Plan, Disclosure Statement, or Confirmation Order to the contrary, neither the Plan nor the Confirmation Order shall constitute a finding, determination, admission, stipulation, or adjudication regarding the priority of any Lien or security interest as between or among any Holders of Secured Claims with respect to any Assets of the Debtors or their Estates. All rights, claims, defenses, and arguments concerning the priority of any Lien or security interest as between or among any Holder of Secured Claims with respect to any Assets of the Debtors or their Estates are expressly preserved, and any dispute regarding the relative priority of Liens or security interest held by the Holders of Secured Claims shall be determined in accordance with applicable non-bankruptcy law, any applicable loan documents, or other governing agreements.

## ARTICLE VI.

## DISTRIBUTIONS

### 6.1. *Distributions Generally.*

Except as otherwise provided in the Plan, the Disbursing Agent shall make all applicable Plan Distributions to the appropriate Holders of Allowed Claims and Allowed Interests in accordance with the terms of the Plan. The Disbursing Agent shall be authorized to cause partial distributions to be made on account of Allowed Claims before all Claims are Allowed. The Disbursing Agent shall also be authorized to cause distributions following the Effective Date to carry out the terms of the Plan, including causing distributions to Holders of Allowed Claims and subsequent distributions to the extent necessary to ensure that each Holder of an Allowed Claim that is entitled to receive distributions pursuant to the Plan, as applicable, receives a distribution equal to the value to which such Holder is entitled, as applicable.

### 6.2. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors or the Disbursing Agent, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. The Debtors, the Reorganized Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. All distributions to Allowed Holders of Claims shall be deemed to be made to or by the Disbursing Agent.

### 6.3. *Date of Plan Distributions.*

Except as otherwise provided in this Plan (including payments made in the ordinary course of the Debtors' business) or as paid pursuant to a prior Bankruptcy Court order, on the Effective Date or, if a Claim is not Allowed on the Effective Date, on the date that such Claim becomes Allowed, or, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with the Plan and Confirmation Order, including, without limitation, the treatment provisions of Article IV of the Plan, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class provided in the Plan; *provided, that,* the Reorganized Debtors may implement periodic distribution dates to the extent they determine them to be appropriate; *provided*, *further*, that the Reorganized Debtors may make distributions following the Effective Date, including to Holders of Disputed Claims that become Allowed Claims and subsequent distributions to the extent necessary to ensure that each Holder of an Allowed Claim that is entitled to receive distributions under the Plan, as applicable, receives a distribution to the value to which such Holder is entitled in accordance with the Plan. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII. Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

23

### 6.4.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date or as otherwise provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agent directly related to distributions hereunder shall be reimbursed by the Reorganized Debtors.

### 6.5.    *Rights and Powers of Disbursing Agent.*

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, Holders of Claims against the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No Holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action vested in a Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Powers of Disbursing Agent. The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in such Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by such Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(c)    Expenses Incurred on or After the Effective Date. The amount of any reasonable fees and expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

### 6.6.    *No Postpetition Interest on Claims.*

Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 6.7.    *Delivery of Plan Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made by the Disbursing Agent, who shall transmit such distribution to the applicable Holders of

Allowed Claims as and when required by the Plan at: (i) the address of such Holder on the books and records of the Debtors or its agents or (ii) at the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses including on any transfers of Claim Filed pursuant to Bankruptcy Rule 3001.

In the event that any distribution to any Holder is returned as undeliverable, no further distributions shall be made to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then-current address, at which time, or as soon thereafter as reasonably practicable, all currently-due, missed distributions shall be made to such Holder without interest. Nothing herein shall require any Disbursing Agent to attempt to locate Holders of undeliverable distributions and, if located, assist such Holders in complying with Section 6.15 of the Plan.

### 6.8. *Plan Distributions after Effective Date.*

Plan Distributions made after the Effective Date to: (i) Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims or (ii) Holders of Allowed Claims that are necessary to ensure that each such Holder receives such distribution equal to the value to which such Holder is entitled pursuant to Article IV of the Plan, as applicable, shall be deemed to have been made on the Effective Date.

### 6.9. *Unclaimed Property.*

One (1) year from the later of: (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the date of a distribution on an Allowed Claim, all distributions payable on account of such Claim that are undeliverable or otherwise unclaimed shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtors or their successors or assigns, and all claims of any other Person (including the Holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. The Reorganized Debtors and the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's Filings.

### 6.10. *Time Bar to Cash Payments.*

Checks issued by a Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of first issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the applicable Disbursing Agent by the Holder of the Allowed Claim to which such check was originally issued, prior to the expiration of the ninety (90) day period.

### 6.11. *Manner of Payment under the Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Disbursing Agent and Reorganized Debtors, any Cash payment to be made hereunder by the Disbursing Agent or Reorganized Debtors may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.12.    *Satisfaction of Claims.*

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, release, settlement, and discharge of and exchange for such Allowed Claims.

### 6.13.    *Minimum Cash Distributions.*

A Disbursing Agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any Holder of an Allowed Claim; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.13, such distribution shall be added to any subsequent distribution to be made on behalf of the Holder's Allowed Claim.

### 6.14.    *Setoffs and Recoupment.*

(a)    The Debtors, Reorganized Debtors, or the Disbursing Agent, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made pursuant to the Plan on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, Reorganized Debtors, or their successors may have against the Holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or their successor of any claims, rights, or Causes of Action that the Debtors, Reorganized Debtors, or their successor or assign may possess against the Holder of such Claim.

(b)    In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors, unless: (i) the Debtors or the Reorganized Debtors, as applicable, have consented, or (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, this paragraph does not create any new rights to setoff or recoupment that did not exist under any applicable law or agreement in existence prior to the Effective Date.

### 6.15.    *Allocation of Distributions between Principal and Interest.*

Except as otherwise provided in the Plan and subject to Section 6.7 of the Plan or as otherwise required by law (as reasonably determined by the Disbursing Agent and Reorganized Debtors), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.16.    *No Distribution in Excess of Amount of Allowed Claim or Allowed Interest.*

Notwithstanding anything in the Plan to the contrary, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

*6.17.    **Withholding and Reporting Requirements.***

(a)    *Withholding Rights*. In connection with the Plan, any Person issuing any instrument or making any distribution described in the Plan (or any other related agreement) or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or non-U.S. taxing authority, and, notwithstanding any provision in the Plan to the contrary, any such Person shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any distribution or payment to be made under or in connection with the Plan (or any other related agreement) to generate sufficient funds to pay applicable withholding taxes, using its own funds to pay any applicable withholding taxes and retaining a portion of the applicable distribution, withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions or establishing any other mechanisms it believes are reasonable and appropriate. Any amounts withheld shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan or payment in connection therewith shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

(b)    *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent or such other Person designated by the Reorganized Debtors (which Person shall subsequently deliver to the applicable Disbursing Agent any applicable Internal Revenue Service ("IRS") Form W-8 or Form W-9 received) an appropriate IRS Form W-9 or an appropriate IRS Form W-8 and any other forms or documents reasonably requested by the Reorganized Debtors to reduce or eliminate any withholding required by any federal, state, or local taxing authority. If such request is made by the Reorganized Debtors, the Disbursing Agent, or such other Person designated by the Reorganized Debtors or a Disbursing Agent and such party fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Reorganized Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtors or its respective property.

## ARTICLE VII.

## PROCEDURES FOR DISPUTED CLAIMS.

*7.1.    **Disputed Claims Generally.***

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed

Claim unless and until such Claim is deemed Allowed pursuant to the Plan or Final Order, including the Confirmation Order (when it becomes a Final Order) Allowing such Claim. Except insofar as a Claim is Allowed under the Plan or was Allowed prior to the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall have and retain any and all rights and defenses such Debtors have with respect to any Disputed Claim. Any objections to Claims shall be served and Filed on or before the Claim Objection Deadline. All Disputed Claims not objected to by the end of such period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

### 7.2.    *Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan, the Debtors or Reorganized Debtors, as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the authority: (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 7.3.    *Estimation of Claims.*

The Debtors or Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.

28

### 7.4. *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or Reorganized Debtors, as applicable, upon stipulation between the parties in interest without a Claims objection having to be Filed and without any further notice or action, order, or approval of the Bankruptcy Court.

### 7.5. *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Plan Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or Reorganized Debtors, as applicable.

### 7.6. *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim or Interest is Filed, no payment or Plan Distribution provided under the Plan shall be made on account of such Claim or Interest unless and until (and only to the extent that) such Claim or Interest becomes an Allowed Claim or Allowed Interest.

### 7.7. *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Plan Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV of the Plan.

### 7.8. *Claim Resolution Procedures Cumulative.*

All of the Claims, objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.9. *Disputed Claims Reserves.*

(a)     The Debtors, Reorganized Debtors or Disbursing Agent, as applicable, shall establish one or more reserves with respect to amounts that would otherwise be distributable to Holders of Claims that are Disputed Claims as of the Distribution Record Date, which reserves shall be administered by the Debtors, Reorganized Debtors, or Disbursing Agent, as applicable.

(b)     At such time as all Claims that are Disputed Claims as of the Distribution Record Date have been resolved, any remaining assets in the Disputed Claims Reserve(s) (net of

any expenses, including any allocable taxes incurred or payable by the Disputed Claims Reserve(s), including in connection with such distribution) shall be distributed to Holders of Allowed Claims in accordance with the terms of <u>Article IV</u> of the Plan and, thereafter, to the Reorganized Debtor.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, or the receipt of a determination by the Internal Revenue Service, the Debtors, the Reorganized Debtors or the Disbursing Agent, as applicable, shall treat any Cash and other property held in the Disputed Claims Reserve(s) established under this Section 7.9 of the Plan as one or more "disputed ownership funds" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, the Reorganized Debtors, the Disbursing Agent, and the Holders of Disputed Claims) shall be required to report for tax purposes consistently with the foregoing. The Reorganized Debtors or the Disbursing Agent, as applicable, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Disputed Claims Reserve(s) for all taxable periods through the date on which final distributions are made.

(d)     Each Disputed Claims Reserve shall be responsible for payment, out of the assets of such reserve, of any taxes imposed on the Disputed Claims Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve) or other expenses, assets of the Disputed Claims Reserve may be sold to pay such taxes or other expenses.

### 7.10.   *Single Satisfaction of Claims and Interests.*

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent of the underlying Allowed Claim or Allowed Interest plus applicable interest required to be paid hereunder, if any.

### 7.11.   *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of (i) the Bankruptcy Court, or (ii) the Reorganized Debtors.

## <u>ARTICLE VIII.</u>

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1.   *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously rejected or assumed shall be deemed assumed by the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or assumption and assignment, as applicable, of such Executory

Contracts or Unexpired Leases as of the Effective Date, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. **Any Claim for damages related to the rejection of any Executory Contract or Unexpired Lease must be filed and served on the Debtors no later than thirty (30) days after the Effective Date.**

Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, but not assigned to a third-party before the Effective Date, shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by agreement of the parties, the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control", "assignment", or similar provision), then such provision shall be deemed unenforceable on account of such assumption under the Plan such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto.

### 8.2. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

**The Disclosure Statement and this Plan constitute notice to all affected parties that the proposed cure amount for each Executory Contract or Unexpired Lease is $0.** The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as practicable thereafter, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors, as applicable, of such cure Claim; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any cure Claim despite the failure of the relevant counterparty to File such request for payment of such cure Claim. The Reorganized Debtors may settle any cure Claim on account of any Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

**Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment or related cure amount must be Filed, served and actually received by the Debtors on or before seven (7) days prior to the Confirmation Hearing.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or cure amount related thereto (if any) will be deemed to have assented to such assumption, assumption and assignment, or cure amount.

### 8.3. *Dispute Resolution.*

In the event of a dispute between the Debtors and a non-Debtor counterparty to any Executory Contract or Unexpired Lease to be assumed or assumed and assigned regarding: (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter

pertaining to assumption, assumption and assignment, or the cure payments required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon in writing by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following: (i) the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date, or (ii) upon the written, consensual resolution between the counterparty to any Executory Contract or Unexpired Lease and the Debtors or Reorganized Debtors, as applicable.

The Debtors or Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease as part of a resolution of any cure disputes. In the event the Debtors elect to reject any Executory Contract or Unexpired Lease, the Debtors may File a notice of rejection with the Bankruptcy Court and serve such notice on the counterparty to such Executory Contract or Unexpired Lease on or prior to the Effective Date, and such Executory Contract or Unexpired Lease shall be deemed rejected upon the Filing of such notice. Any Claim for damages related to the rejection of such Executory Contract or Unexpired Lease must be filed and served on the Debtors no later than thirty (30) days after the Effective Date. Claims for rejection damages shall be treated as Class 6 General Unsecured Claims under this Plan.

### 8.4. *Survival of the Debtors' Indemnification Obligations.*

(a)    Notwithstanding anything in the Plan (including Section 10.3 of the Plan), all Indemnification Obligations shall: (a) remain in full force and effect, (b) not be discharged, impaired, or otherwise affected in any way, including by the Plan or the Confirmation Order, (c) not be limited, reduced or terminated after the Effective Date, and (d) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date; *provided*, *that*, the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such Indemnification Obligation. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any Claim based on the Debtors' Indemnification Obligations shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)    In accordance with the foregoing, the Reorganized Debtors shall cooperate with current and former officers, directors, members, managers, agents, or employees in relation to the Indemnification Obligations assumed under the Plan, including responding to reasonable requests for information and providing access to attorneys, financial advisors, accountants, and other professionals with knowledge of matters relevant to any such claim covered by an Indemnification Obligation assumed under the Plan, including any claim or Cause of Action arising under any state or federal securities laws.

8.5.   ***Insurance Policies/Claims Payable by Third Parties.***

(a)   All insurance policies to which the Debtors are a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the Debtors or Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall vest in the Reorganized Debtors. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured Persons" in any D&O Policy.

(b)   In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

(c)   In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

(d)   No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. If an applicable insurance policy has a SIR, the Holder of an Insured Litigation Claim shall have an Allowed General Unsecured Claim against the Estates solely up to the amount of the SIR that may be established upon the liquidation of the Insured Litigation Claim. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim solely in the amount of the applicable SIR, if any; *provided*, *however*, that nothing herein obligates the Debtors or Reorganized Debtors to otherwise satisfy any SIR under any insurance policy. Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely File a Proof of Claim by the applicable claims bar date.

8.6.   ***Intellectual Property Licenses and Agreements.***

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall

be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the Debtors and Reorganized Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors in accordance with the Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.7.  *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including, without limitation, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.8.  *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

### 8.9.  *Reservation of Rights.*

(a)     Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors or Reorganized Debtors or respective Affiliates have any liability thereunder.

(b)     Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors or Reorganized Debtors under any executory or non-Executory Contract or any unexpired or expired lease.

34

(c)        Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or Reorganized Debtors under any executory or non-Executory Contract or any unexpired or expired lease.

(d)        If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

9.1.    *Conditions Precedent to the Effective Date*.

The following are conditions precedent to the Effective Date of the Plan:

(a)        The Bankruptcy Court shall have entered the Confirmation Order, and such Confirmation Order shall have become a Final Order;

(b)        The Professional Fee Escrow shall have been established and funded in Cash; and

(c)        All governmental and third-party approvals and consents necessary, if any, in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; *provided, however,* that with respect to the U.S. Eagle Loans and U.S. Eagle Secured Claims, approval from the SBA to reinstate and return the U.S. Eagle Loans to regular servicing status shall be sought following entry of Confirmation Order, and U.S. Eagle's acceptance of the Plan shall be subject to receipt of such approval from the SBA, and the Debtors shall fully cooperate with U.S. Eagle in seeking such approval and shall promptly provide any information and/or documentation requested by U.S. Eagle and/or the SBA, and shall comply with any conditions or requirements imposed by the SBA in connection with the request for such approval.

9.2.    *Timing of Conditions Precedent.*

Notwithstanding when a condition precedent to the Effective Date occurs, unless otherwise specified in the Plan or any Plan Supplement document, for the purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided*, *that*, to the extent a condition precedent (the "Prerequisite Condition") may be required to occur prior to another condition precedent (a "Subsequent Condition") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the applicable Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

### 9.3.    *Waiver of Conditions Precedent.*

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent of the Plan may be waived by the Debtors.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.4.    *Effect of Failure of a Condition.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by the Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Person.

## ARTICLE X.

## EFFECT OF CONFIRMATION OF PLAN.

### 10.1.    *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any Plan Document, on the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other interests or encumbrances unless expressly provided otherwise by the Plan or Confirmation Order. In addition, all rights, benefits, and protections provided to any of the Debtors or their Estates pursuant to the Plan and the Confirmation Order shall vest in the Reorganized Debtors unless expressly provided otherwise by the Plan or the Confirmation Order.  On and after the Effective Date, except as otherwise provided herein, the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims (including any Administrative Expense Claims), Interests, and Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 10.2    *Binding Effect.*

As of the Effective Date, the Plan shall bind all Holders of Claims against the Debtors and their respective successors and assigns, notwithstanding whether any such Holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

### 10.3. Discharge of Claims.

**Except as otherwise provided for in the Plan, the rights afforded under the Plan and the treatment of all Claims and Interests thereunder shall be in exchange for and in complete satisfaction, settlement, discharge, and release of Claims and Interests of any nature whatsoever, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, their Estates, or any of the assets or properties of the Estates. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin, or preclude any Claim that has not arisen as of the Confirmation Date that any governmental unit may have against the Debtors and nothing in the Plan shall release, nullify, or enjoin the enforcement of any liability to a governmental unit under statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order. Pursuant to the Confirmation Order, the Debtors will be discharged from any debt that arose before Confirmation of the Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code. Any default or "event of default" by the Debtors with respect to any Claim that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.**

### 10.4. Term of Injunctions or Stays.

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.5. Releases by the Debtors.

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan, to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Debtors and Reorganized Debtors conclusively, absolutely, unconditionally and irrevocably, release and discharge the Debtors' bankruptcy counsel Davidoff Hutcher & Citron LLP and the Debtors' financial advisor CBIZ Forensic Consulting Group, LLC and its affiliates (collectively, the "Released Parties") from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including but not limited to any derivative claims, asserted or assertable on behalf of the Debtors or Reorganized Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, Reorganized Debtors, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Person, including but not limited to Claims and Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or Reorganized**

Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.5 shall only be applicable to the maximum extent permitted by law; (b) shall not include a release of any claim arising from the gross negligence, willful misconduct, or actual fraud of any party being released; and (c) shall not be construed as releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement executed to implement the Plan.

### 10.6.  *Exculpation.*

Subject to the limitations set forth in Section 1125(e) of the Bankruptcy Code, the Debtors' respective members, officers, directors, and attorneys and advisors whose retention has been approved by the Court (the "Exculpated Parties") shall not have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, (i) the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan, the Disclosure Statement, or any agreement or document created or entered into in connection with the Plan, the Disclosure Statement, and (ii) the pursuit of confirmation and consummation of the Plan.

Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this section: (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or actual fraud; (iii) shall not affect the liability of any Exculpated Party to U.S. Eagle under any of the U.S. Eagle Loan Documents; and (iv) shall not be construed as exculpating any post-Effective Date obligations of any party or Entity under the Plan, any document, instrument, or agreement executed to implement the Plan or otherwise.

### 10.7.  *Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the Reorganized Debtors shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in

38

the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity not released pursuant to the Plan.

### 10.8. *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to the Debtors shall be void and of no further force or effect with respect to the Debtors to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtors as a result of, or gives rise to a right of any Entity based on any of the following: (a) the insolvency or financial condition of the Debtors; (b) the commencement of the Chapter 11 Cases; (c) the Confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the restructuring.

### 10.9. *Solicitation of Plan.*

As of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of its respective directors, managers, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any Securities under the Plan.

### 10.10. *Corporate and Limited Liability Company Action.*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (a) the assumption of all employee compensation and Employee Arrangements of the Debtors as provided herein, (b) the selection of the managers, directors, and officers for the Reorganized Debtors, and (c) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, managers, or officers of the Debtors or Reorganized Debtors. On or (as

applicable) before the Effective Date, the appropriate officers of the Debtors or Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, but not limited to: (v) the New Corporate Governance Documents, and (w) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this section 10.10 shall be effective notwithstanding any requirements under non-bankruptcy law.

## **ARTICLE XI.**

## **RETENTION OF JURISDICTION.**

### *11.1    Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, proceeding, application, contested matter, and/or other litigated matter pending on or commenced after the Confirmation Date;

(c)    to hear and resolve any disputes arising from or related to: (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)    to ensure that distributions to Holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or any counterclaim related thereto;

(f)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in

the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    to hear and determine all Professional Fee Claims;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(o)    to resolve disputes concerning Disputed Claims or the administration thereof;

(p)    to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any claims bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim is discharged hereunder or for any other purposes;

(q)    to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(r)    to enter a final decree closing the Chapter 11 Cases;

(s)    to recover all Assets of the Debtors and property of the Estates, wherever located;

(t)    to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(u)    to hear and determine all matters and disputes pertaining to Post-Confirmation Obligations of Reorganized Debtors.

11.2.    ***Courts of Competent Jurisdiction.***

41

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without exclusive jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS.

### 12.1.  *Payment of Statutory Fees.*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall File all monthly operating reports through the Effective Date. On and after the Effective Date, the Reorganized Debtors or Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtors or Reorganized Debtors, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Debtors', or Reorganized Debtors', as applicable, cases being closed, dismissed, or converted to a case or cases under Chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

### 12.2.  *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.  *Request for Expedited Determination of Taxes.*

The Debtors and Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 12.4.  *Amendments.*

(a)  *Plan Modifications*. The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code provided that no such amendment, modification or supplement shall adversely impact the treatment of any Allowed Claim hereunder. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of Holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)      *Other Amendments.* Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

### 12.5.   **Effectuating Documents and Further Transactions.**

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable member(s), board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.6.   **Revocation or Withdrawal of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by any Debtor or any other Person.

### 12.7.   **Severability of Plan Provisions.**

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized Debtors (as the case may be), and (c) non-severable and mutually dependent.

### 12.8.   **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under the

43

Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 12.9. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.10. *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 12.11. *Immediate Binding Effect.*

Notwithstanding any Bankruptcy Rule providing for a stay of the Confirmation Order or Plan, including Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Holders of Claims, the Released Parties, each respective successors and assigns, including, without limitation, the Reorganized Debtors, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

### 12.12. *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### 12.13. *Successor and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

### 12.14. *Entire Agreement.*

On the Effective Date, the Plan, and Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.15. *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

*12.16.  **Notices.***

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

> Davidoff Hutcher & Citron LLP
> 120 Bloomingdale Road, Suite 100
> White Plains, NY 10605
> Attn: Robert L. Rattet, Esq.
> Email: rlr@dhclegal.com
> 914-381-7400
>
> - and -
>
> Office of the United States Trustee, Region 2
> Attn: William J. Birmingham, Esq.
> 560 Federal Plaza
> Central Islip, NY 11722
> William.birmingham@usdoj.gov
> 631-715-7789

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

Dated: June 21, 2026

SOUND VISION CARE, INC.

SVC OF CORAM, LLC

SVC OF EAST SETAUKET, LLC

SVC OF RIVERHEAD, LLC

SVC OF SOUTHOLD, LLC

SVC OF FRESH MEADOWS, LLC

SVC OF MANHASSET, LLC

SVC OF MURRAY HILL, LLC

By:    */s/ Jeff Williams*
       Jeff Williams, Authorized Signatory

45