DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Telephone:  (914) 381-7400
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.

*Counsel to the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 Case |
| SOUND VISION CARE, INC., *et. al*., | Case No.: 25-72421 (LAS) |
| Debtors.[1] | (Jointly Administered) |

---

## DEBTORS' MEMORANDUM OF LAW IN
## SUPPORT OF CONFIRMATION OF DEBTORS'
## <u>FIFTH AMENDED CHAPTER 11 PLAN</u>

Sound Vision Care, Inc. and the other above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned Chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>"), submit this memorandum of law (this "<u>Memorandum</u>") in support of confirmation of the Debtors' *Fifth Amended Chapter 11 Plan* (as modified, amended or supplemented from time to time, the "<u>Plan</u>") [ECF No. 460], pursuant to sections 105, 1122, 1123, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>"), Rules 3018, 3019, and

---

[1]  The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693); (ii) SVC of Coram, LLC (7727); (iii) SVC of East Setauket, LLC (4510); (iv) SVC of Riverhead, LLC (9996); (v) SVC of Southold, LLC (4232); (vi) SVC of Fresh Meadows, LLC (4333); (vii) SVC of Manhasset, LLC (7234); and (viii) SVC of Murray Hill, LLC (8674). The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3018-1 of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the Eastern District of New York (the "Local Rules"). In support of this Memorandum, the Debtors

rely on the *Declaration of Jeffrey Williams Jr. in Support of the Chapter 11 Petitions and Requests

for First Day Relief* (the "First Day Declaration"),[2] filed on the June 27, 2025 [ECF No. 15]. In

further support of this Memorandum, the Debtors have filed the *Declaration of Robert L. Rattet

Regarding the Solicitation of Votes and Tabulation of Ballots Cast* [ECF No. 454] (the "Voting

Declaration"), and respectfully present as follows:

### PRELIMINARY STATEMENT

1.        The Debtors commenced the Chapter 11 Cases as a "free fall" case on June 23,

2025 to restructure a balance sheet burdened by financial obligations owing in large part to

merchant cash advance lenders (the "MCA Lenders"). Since that time, the Debtors, who operate

retail optician and eyeglass boutiques at seven (7) locations in Long Island, have worked to

streamline their operations by closing two locations. In developing the Plan, the Debtors gave due

consideration to various exit alternatives and engaged in significant discussions and negotiations

with creditors and other parties in interest. The Debtors also conducted a careful review of their

operations, their prospects as an ongoing business, financial projections, and estimated recoveries

in a liquidation scenario, and concluded that recoveries to the Debtors' creditors will be maximized

under the Plan. The Plan ultimately prosecuted provides for recoveries to Allowed Claim holders,

including: (i) payment in full in Cash to Holders of Administrative Claims, Priority Tax Claims,

and Priority Non-Tax Claims (Class 1); (ii) reinstatement of the: (a) U.S. Eagle Secured Claims

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the First Day Declaration, as applicable.

(Class 2), (b) SBA Secured Claims (Class 3), (c) Flushing Bank Secured Claims (Class 4), and (d) BOA Secured Claims (Class 5), on the terms set forth in the Plan; and (iii) payment to Holders of Allowed General Unsecured Claims (Class 6) of 20% of the pro rata amount of their Claim, in four equal payments commencing on the Effective Date, and thereafter, semi-annual distributions of $.05 per dollar of Allowed Claims for eighteen months.

## JURISDICTION

2.    The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper plan proponents under section 1121(a) of the Bankruptcy Code.

3.    The bases for the relief requested herein are sections 105, 1122, 1123, and 1129 of the Bankruptcy Code, Bankruptcy Rules 3018, 3019 and 3020, and Local Rule 3018-1.

## STATEMENT OF FACTS

### I.    General Background of the Chapter 11 Cases

4.    On June 23, 2025 (the "Petition Date"), each of the Debtors, other than SVC of Murray Hill,[3] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

---

[3]    Murray Hill commenced its Chapter 11 case on December 17, 2025.

5.      By entry of an order dated June 26, 2025 [Dkt. No. 10], the Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      The Debtors respectfully refer the Bankruptcy Court to: (a) the Plan; (b) the Third Amended Disclosure Statement (the "Disclosure Statement") [Docket No. 399]; (c) the First Day Declaration; (d) the *Amended Order (A) Approving Third Amended Disclosure Statement, (B) Establishing Treatment of Claims for Notice and Voting Purposes, (C) Establishing Deadlines and Procedures of Temporary Allowance of Claims for Voting Purposes; (D) Approving Solicitation Packages and Procedures for Distribution; (E) Approving Form of Ballots; (F) Establishing Voting Deadlines and Procedures of the Tabulation of Votes; (G) Scheduling Hearing on Confirmation of Plan; (H) Approving Form and Manner of Notice of Confirmation Hearing and Procedures for Filing Objections to Confirmation of Third Amended Plan; and (I) Granting Related Relief,* dated May 6, 2026 [ECF Docket No. 414] (the "Disclosure Statement & Scheduling Order"); (f) the Voting Declaration; (g) the proposed confirmation order filed contemporaneously herewith (the "Proposed Confirmation Order"); and (i) the record of the Chapter 11 Cases for an overview of relevant facts that may bear on confirmation of the Plan.

**II.      Overview of the Plan**

7.      The following chart summarizes the treatment provided by the Plan for each Class of Claims and Interests.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | U.S. Eagle Secured Claims | Impaired | Yes |
| 3 | SBA Secured Claims | Impaired | Yes |

| 4 | Flushing Bank Secured Claims | Impaired | Yes |
|---|---|---|---|
| 5 | BOA Secured Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Interests | Unimpaired | No (Presumed to Accept) |

8.      As set forth above and in the Plan, Class 2 (U.S. Eagle Secured Claims), Class 3 (SBA Secured Claims), Class 4 (Flushing Bank Secured Claims); Class 5 (BOA Secured Claims) and Class 6 (General Unsecured Claim) are Impaired Classes entitled to vote on the Plan (collectively, the "Voting Classes"). Class 1 (Priority Non-Tax Claims) and Class 7 (Interests, and collectively, the "Non-Voting Classes" ) are not Impaired and presumed to have accepted the Plan.

9.      The Plan provides in Section 8.1 that on the Effective Date, except as otherwise provided therein or pursuant to the Confirmation Order, each Executory Contract and Unexpired Lease shall be deemed assumed. As of the date of this Memorandum, the Debtors do not intend to reject any Executory Contracts.

**III.    Solicitation of the Plan**

10.      Pursuant to the Disclosure Statement & Scheduling Order, on or before May 8, 2026, the Debtors caused to be mailed by first class mail an information and solicitation package (the "Solicitation Package") to the holders of Claims in the Voting Classes at such holder's address as of the Record Holder Date. *See Declaration of Mailing and Certificate of Service* [ECF No. 415]. The Solicitation Package contained a copy of: (a) the Disclosure Statement, including a copy of the Plan[4] as an exhibit, (b) the Disclosure Statement & Scheduling Order, and (c) a Ballot with

---

[4]    The Debtors included in the Solicitation Package a copy of the Third Amended Plan of Reorganization [ECF Docket No. 398]. The Debtors have made modifications to the Plan, which modifications are shown in the blackline attached to the Plan. The Debtors believe the modifications were such that re-solicitation was not necessary.

appropriate instructions, (d) the Confirmation Hearing Notice, and (e) a pre-addressed, postage-prepaid return envelope.

11.     The Disclosure Statement & Scheduling Order established June 5, 2026 as the deadline for the receipt of votes (the "Voting Deadline").

12.     On June 12, 2026, the Debtors filed the Voting Declaration, certifying the results and methodology for tabulation of Ballots accepting or rejecting the Plan. As detailed in the Voting Report, (i) 100% in number and 100% in amount of the Holders of Claims in Class 2 (U.S. Eagle Secured Claims) that cast Ballots voted to accept the Plan; (ii) no parties in Class 3 (SBA Secured Claims) that were eligible to cast votes actually cast a Ballot; (iii) 100% in number and 100% in amount of the Holders of Claims in Class 4 (Flushing Bank Secured Claims) that cast Ballots voted to accept the Plan; (iv) 100% in number and 100% in amount of the Holders of Claims in Class 5 (BOA Secured Claims) that cast Ballots voted to accept the Plan; and (v) 100% in number of 100% in amount of the Holders in Class 6 (General Unsecured Claims) that cast Ballots voted to accept the Plan.[5]

### IV.     Notice Procedures and Confirmation Hearing

13.     The Disclosure Statement & Solicitation Order also established: (a) June 16, 2026 at 5:00 p.m. (prevailing Eastern Time) as the deadline to object to the confirmation of the Plan (the

---

[5]     One of the MCA Lenders, Kapitus LLC, rejected the Plan. On November 4, 2025, the Debtors filed a proceeding entitled *Sound Vision Care Inc. et. al. v. Kapitus LLC, et. al.* (the "Adversary Proceeding") seeking in part to disallow Kapitus' claim. Pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure, a plan may be accepted or rejected by any creditor whose claim is deemed allowed pursuant to § 502 of the Code. After notice and a hearing, the court may temporarily allow a claim to which an objection is interposed in an amount which the court deems proper for the purpose of accepting or rejecting a plan. Kapitus has filed a Motion to Compel Arbitration and Stay this Proceeding (Adv. Proc. Docket No. 62), which is awaiting oral argument. Despite the notice explicitly given to Kapitus that the Debtors would seek to disallow Kapitus's vote, Kapitus did not seek provisional allowance of its claim pursuant to Fed.R.Bankr.P. Rule 3018(a)(4), or for determination of an amount for temporary allowance under 11 U.S.C. § 502(c). For the foregoing reasons, the Debtors wish the Court to disallow, for voting purposes, the Kapitus Claim.

"Objection Deadline") and (b) June 25, 2026 at 10:00 a.m. (prevailing Eastern Time) as the date and time for the hearing to consider confirmation of the Plan (the "Confirmation Hearing").

14.    On June 12, 2026, the Debtors filed with the Bankruptcy Court the Plan Supplement, which includes the following documents as exhibits:

(a) Exhibit A – a description of modifications between the Plan and Third Amended Plan;

(b) Exhibit B = a blackline of the Plan as against the Third Amended Plan;

(c) Exhibit C – an updated cash flow projection; and

(d) Exhibit D – Debtors' governance requirement pursuant to section 1129A).

15.    On June 21, 2026, the Debtors also filed a draft of the order confirming the Plan [ECF Docket No. ] (the "Confirmation Order").

16.    Consistent with the Plan and the relief requested therein, the Debtors intend for the effective date of the Plan (the "Plan Effective Date") to occur as soon as practicable following confirmation, subject to the satisfaction or waiver of the conditions set forth in Section 9.1 of the Plan.

## ARGUMENT

**The Plan Satisfies Each Mandatory Requirement for Confirmation**

17.    To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code. As described in detail below, the Debtors will establish that the Plan complies with all relevant provisions of the Bankruptcy Code and all other applicable law.

1. **The Plan Complies Fully with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))**

18.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code. The principal aim of this provision is to ensure

7

compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization. Accordingly, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 and 1123 of the Bankruptcy Code. As demonstrated below, the Plan complies with both sections 1122 and 1123 in all respects, and therefore satisfies section 1129(a)(1). 11 U.S.C. § 1129(a)(1); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 410 (Bankr. S.D.N.Y. 2016). *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648–59 (2d Cir. 1988).

2. **The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code**

19.     Section 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." The rules for classification are straightforward: "dissimilar claims may not be classified together; [and] similar claims may be classified separately only for a legitimate reason." This standard gives plan proponents "significant flexibility" in determining how to classify claims together so long as there is a rational basis to do so.

20.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into seven separate Classes, with each Class differing from the Claims and Interests in each other Class in a legal or factual manner. Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | U.S. Eagle Secured Claims | Impaired | Yes |

8

| 3 | SBA Secured Claims | Impaired | Yes |
| 4 | Flushing Bank Secured Claims | Impaired | Yes |
| 5 | BOA Secured Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Interests | Unimpaired | No (Presumed to Accept) |

21. Claims and Interests assigned to each Class described above are substantially similar to the other Claims and Interests in each such Class. In addition, valid business, legal, and factual distinctions justify the separate classification of the Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.

22. The Plan separately classifies the Claims and Interests because each Holder of such Claims or Interests may hold (or may have held) rights in or against the Estates legally dissimilar to the Claims or Interests in other Classes. For example, Classes 2, 3, 4, and 5 each contain the Claims of a single Secured Creditor who has unique rights as against the Debtors. Moreover, all of the Claims of Holders of General Unsecured Creditors are contained in Class 6.

23. As the classification of Claims and Interests set forth in the Plan are based on legitimate reasons, as set forth above, the Plan satisfies section 1122.

**3. The Plan Satisfies the Plan Requirements of Section 1123(a) of the Bankruptcy Code**

24. The applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of the treatment and classification of claims, the equal treatment of claims within such classes, and the mechanics of implementing the plan.

25.     The Plan satisfies each of these requirements as set forth below, and no party has asserted otherwise:

- Article III, Section 3.2 of the Plan designates Classes of Claims and Interests as required by section 1123(a)(1) of the Bankruptcy Code;

- Article III, Section 3.2 of the Plan also identifies Unimpaired Classes of Claims and Interests as required by section 1123(a)(2) of the Bankruptcy Code;

- Article IV of the Plan specifies treatment of Impaired Classes of Claims and Interests as required by section 1123(a)(3) of the Bankruptcy Code; and

- Article V of the Plan provides adequate means for the Plan's implementation, as required by section 1123(a)(5) of the Bankruptcy Code, including, without limitation,

## 4. The Debtors Have Complied Fully with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))

26.     Section 1129(a)(2) of the Bankruptcy Code requires the plan proponents to comply with applicable provisions of the Bankruptcy Code. Case law and legislative history indicate that this section principally reflects the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code, which prohibit the solicitation of plan votes without a court-approved disclosure statement.

### i.     The Debtors Complied with Section 1125 of the Bankruptcy Code

27.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

10

28.     The Debtors have satisfied section 1125 because the Debtors solicited votes on the Plan after the Court approved the Disclosure Statement in accordance with section 1125(a)(1). The Court also approved, *inter alia*, the contents of the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting on and objecting to the Plan.

29.     The Debtors have complied with the content and delivery requirements of the Disclosure Statement & Scheduling Order and did not solicit votes on the Plan before the entry of the Disclosure Statement & Scheduling Order, thereby satisfying the requirements of section 1125(a) and (b) of the Bankruptcy Code. In addition, the Debtors have satisfied the requirements of section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each Holder of a Claim or Interest in a particular Class, by causing the Disclosure Statement to be transmitted to all parties entitled to vote on the Plan.

30.     Finally, the Debtors have solicited the Plan in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the Disclosure Statement & Scheduling Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

### ii.     The Debtors Complied with Section 1126 of the Bankruptcy Code

31.     Under section 1126(f) and (g) of the Bankruptcy Code, a debtor is not required to solicit votes from holders of claims and interests in classes deemed to have accepted or rejected a chapter 11 plan. The Voting Declaration reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code. As set forth in the Voting Declaration, all Voting Classes have either: (i) voted to accept the Plan (including Class 2, 4, 5, and 6) or (ii) as with Class 3 (SBA Claims), not voted.

32.    Pursuant to section 3.6 of the Plan, if a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holder of such Claims in such Class.  Here, the SBA did not vote, and pursuant to section 3.6 of the Plan, Class 3 is presumed to have accepted the Plan.

33.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of section 1129(a)(2), and no party has asserted otherwise.

**5. The Debtors Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3))**

34.    Section 1129(a)(3) of the Bankruptcy Code requires the plan proponent to propose a plan "in good faith and not by any means forbidden by law." To demonstrate that a plan was proposed in good faith, the proponent must "show[] that the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied; in other words, the Plan must also achieve a result consistent with the Bankruptcy Code.

35.    Here, the Plan is the product of an extensive process and reflects a result consistent with the objectives and purposes of the Bankruptcy Code: the maximization of value for creditors. The Plan will yield a meaningful recovery for unsecured creditors of approximately 20% of the value of their Claims. Moreover, the Plan is the product of good faith negotiations between the Debtors and various key constituents, including, but not limited to, the Secured Lenders. The Plan, thus, satisfies section 1129(a)(3).

**6. The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (Section 1129(a)(4))**

36.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan "proponent, by the debtor, or by a person issuing securities or acquiring property under the plan" be approved by the Court as reasonable or subject to approval by the Court as reasonable.

37.    The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Court approval and the requirements under sections 327 through 331 of the Bankruptcy Code. The Plan further provides that Professionals shall file all final requests for payment of Professional Fee Claims no later than forty-five (45) business days after the Effective Date, thereby providing adequate time for interested parties to review the Professional Fee Claims.

38.    For the foregoing reasons, the Debtors submit that the Plan complies with section 1129(a)(4), and no party has asserted otherwise.

**7. The Debtors Have Complied with the Bankruptcy Code's Governance Disclosure Requirement (Section 1129(a)(5))**

39.    Section 1129(a)(5) of the Bankruptcy Code requires that: (a) the proponent of a plan disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan; (b) the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and (c) the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insiders be disclosed.

40.    Section 5.2 of the Plan expressly provides that the Reorganized Debtors shall continue to exist after the Effective Date as the Reorganized Debtors as separate corporations, limited liability companies, partnerships, or other form of entities, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, in accordance with (i) the applicable laws of the respective jurisdictions in which they are

13

incorporated or organized and pursuant to the respective certificate of incorporation or bylaws (or other analogous formation documents) in effect before the Effective Date or (ii) the New Corporate Governance Documents, as applicable. Exhibit D of the Plan Supplement discloses that "the Debtors will continue to be managed and operated by their sole shareholder, Dr. Jeffrey Williams" post-confirmation. Accordingly, the Plan complies with section 1129(a)(5), and no party has asserted otherwise.

**8.   The Plan Does Not Require Government Regulatory Approval of Rate Changes (Section 1129(a)(6))**

41.      Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**9. The Plan is in the Best Interests of Holders of Claims and Interests (Section 1129(a)(7))**

42.      Section 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each individual holder of such a claim or interest has either voted to accept the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. This second prong of this provision, known as the "best interests of creditors" test, is satisfied where the estimated recoveries for the creditors in a hypothetical chapter 7 liquidation would be less than or equal to the estimated recoveries under the plan of liquidation for a holder of an impaired claim that votes to reject the plan.

43.      As demonstrated in the liquidation analysis (the "Liquidation Analysis") attached to the Disclosure Statement, all Holders of Impaired Claims would have recovered at least as much under the Plan as they would in a hypothetical Chapter 7 liquidation. Specifically, the Liquidation

14

Analysis provided that Holders of Class 6 Claims would have realized higher recoveries under the Plan then they would in a hypothetical Chapter 7 liquidation, and Class 2, 3, 4, and 5 Claims would have realized the same recoveries under the Plan as they would in a hypothetical Chapter 7 liquidation.

44.     Accordingly, the Plan satisfies the requirements of section 1129(a)(7), and no party has asserted otherwise.

**10. Section 1129(a)(8) of the Bankruptcy Code**

45.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept the plan or be Unimpaired under the plan. Classes 1 and 7 are Unimpaired, while Classes 2, 4, 5, and 6 are Impaired and voted to accept the Plan while Class 3 is deemed to have accepted the Plan.

**11. The Plan Provides for the Required Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9))**

46.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, pursuant to:

a. section 1129(a)(9)(A), holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (i.e., administrative claims allowed under section 503(b) of the Bankruptcy Code) must receive, on the effective date, cash equal to the allowed amount of such claims;

b. section 1129(a)(9)(B), holders of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code (generally domestic support obligations, wage, employee benefit, and deposit claims entitled to priority), must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of

such claim, if such class has accepted the plan, or the cash of a value equal to the allowed amount of such claim on the effective date of the plan, if such class has not accepted the plan; and

c. section 1129(a)(9)(C), holders of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, i.e., priority tax claims, must receive cash payments over a period not to exceed five (5) years from the petition date, the present value of which equals the allowed amount of such claim.

47.    The Plan satisfies section 1129(a)(9). First, Section 2.1 and 2.2 of the Plan satisfy section 1129(a)(9)(A) because they provide that each Holder of an Allowed Administrative Claim and Professional Fee Claim, respectively, will receive Cash equal to the amount of such Allowed Claim on the Effective Date, or as soon as reasonably practicable thereafter, or at such other time set forth therein. Second, the Plan satisfies section 1129(a)(9)(B) because no Holders of the types of Claims identified in section 1129(a)(9)(B) are Impaired under the Plan. Third, Section 2.3 of the Plan satisfies section 1129(a)(9)(C) because it specifically provides that each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The Debtors also included language cleared with et New York State Department of Taxation and Finance in the Plan (Section 2.3).

48.    Accordingly, the Plan satisfies each of the requirements of section 1129(a)(9), and no party has asserted otherwise.

**12. At Least One Impaired Class of Claims Has Voted to Accept the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10))**

49.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider."

50.      As set forth in the Voting Declaration, Classes 2, 4, 5, and 6 have voted to accept the Plan. Moreover, Class 3 (SBA Claims) are deemed to have accepted the Plan as the only holder – the SBA – did not vote, and section 3.6 of the Plan provides that if a Class contains Holders of Claims that are eligible to vote, and no eligible vote accepts or rejects the Plan, such Class is deemed to accept the Plan.

51.      Given that more than one Impaired Class has voted to accept the Plan, determined without including any acceptance of the Plan by any insider, the Plan satisfies the requirements of section 1129(a)(10), and no party has asserted otherwise.

### 13. The Plan Is Feasible and Is Not Likely to Be Followed by the Need for Further Financial Reorganization (Section 1129(a)(11))

52.      Section 1129(a)(11) of the Bankruptcy Code requires that the Plan is feasible, i.e., plan confirmation is not "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . , unless such liquidation or reorganization is proposed in the plan."[81] To satisfy the requirements of section 1129(a)(11), success need not be guaranteed; rather, a debtor need only demonstrate a "reasonable assurance" of success. The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.

53.      The Plan is feasible within the meaning of section 1129(a)(11). The evidence at the Confirmation Hearing will establish that the Debtors will be able to satisfy or waive the conditions precedent to the Effective Date, set forth in Article IX of the Plan, and the Reorganized Debtors will have sufficient funds to consummate the Plan, administer and reconcile claims, and close these Chapter 11 Cases.

54.      To ensure their ability to fulfill their go-forward obligations under the Plan, the Debtors, with the assistance of their advisors, prepared projections of the Reorganized Debtors'

17

financial performance for the period July 2026 through March 2028 (the "Financial Projections").

The Financial Projections, and the assumptions on which they are based, are included in the

Disclosure Statement and updated Financial Projections were included in the Plan Supplement.

The Debtors submit that the Reorganized Debtors' access to Cash on hand, and the Financial

Projections demonstrate the Reorganized Debtors' ability to make the distributions contemplated

under the Plan, pay any obligations thereunder prior to or on the Effective Date, and continue

operating in the ordinary course post-emergence. The Financial Projections also demonstrate that

confirmation of the Plan is unlikely to be followed by liquidation or the need for further

reorganization. As such, the Plan satisfies the feasibility requirement of section 1129(a)(11).

**14. The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12))**

55.    The Bankruptcy Code requires the payment of all fees payable under 28 U.S.C.

§ 1930. In Section 12.1, the Plan includes an express provision requiring payment of all such fees.

The Plan therefore complies with section 1129(a)(12), and no party has asserted otherwise.

**15. Sections 1129(a)(13)–(16) of the Bankruptcy Code Do Not Apply to the Plan**

56.    Several of the Bankruptcy Code's confirmation requirements are inapplicable to the

Plan. The Debtors do not owe any retiree benefits under section 1114, domestic support

obligations, are not individuals, and are not nonprofit corporations; accordingly, section

1129(a)(13), (14), (15), and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**16. The Plan Complies with the Cramdown Requirements with Respect to The Rejecting Classes (Section 1129(b))**

57.    Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements

of section 1129(a) are met — notwithstanding a failure to comply with section 1129(a)(8) — a

plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with

respect to each class of claims and interests that is impaired and has not accepted the plan. Thus, under section 1129(b) the Bankruptcy Court may "cram down" a plan over rejection by impaired classes of claims or equity interest as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes.

58.    Each of the Impaired Classes under the Plan have either voted to approve the Plan or are deemed to have approved the Plan. As such, the Debtors do not believe that a "cram down" is necessary.

59.    Notwithstanding this fact, the Debtors assert that the Plan does not discriminate and is fair and equitable to all Holders of Claims and Interests in each Class. As such, to the extent necessary, the Debtors assert that the Plan complies with the "cram down" requirements.

**18. The Plan Complies with the Remaining Provisions of Section 1129 of the Bankruptcy Code (Section 1129(c)–(e))**

60.    The Plan satisfies the remaining provisions of section 1129 of the Bankruptcy Code. Section 1129(c), prohibiting confirmation of multiple plans, is not implicated because there is only one proposed plan of reorganization.

61.    The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d).

62.    Finally, section 1129(e) of the Bankruptcy Code is inapplicable because the Chapter 11 Cases are not small business cases. Accordingly, the Plan satisfied the mandatory confirmation requirements set forth in the Bankruptcy Code.

## C. THE DISCRETIONARY CONTENTS OF THE PLAN ARE APPROPRIATE

63.     The Bankruptcy Code identifies various additional provisions that may be incorporated into a Chapter 11 plan, including "any appropriate provision not inconsistent with the applicable provisions of this title." Pursuant to section 1123(b) of the Bankruptcy Code, a plan may: (1) impair or leave unimpaired any class of claims or interests, (2) provide for the assumption, assignment, or rejection of executory contracts and unexpired leases, (3) provide for the settlement of claims and/or the retention of claims or causes of action, (4) provide for the sale of all or substantially all of the debtor's property, (5) modify or leave unaffected the rights of holders of claims, and (6) include any other appropriate provision not inconsistent with the Bankruptcy Code. As provided below, the Plan complies with section 1123(b) of the Bankruptcy Code.

1.   **The Plan Complies with Section 1123(b)(1): Impairment or Unimpairment of Classes of Claims and Interests**

64.     Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." As discussed above, consistent with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan classifies and describes the treatment of each Impaired and Unimpaired Class.

2.  **The Plan Complies with Section 1123(b)(2): Assumption, Assignment, and Rejection of Executory Contracts and Unexpired Leases**

65.     Section 1123(b)(2) of the Bankruptcy Code permits a plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases, subject to section 365 of the Bankruptcy Code. Article VIII of the Plan addresses the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365 of the Bankruptcy Code. Consistent with the requirements of section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan provides that on the Effective Date, except as otherwise

20

provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed to have been assumed by the Debtors, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

**3. The Plan Complies with Section 1123(b)(3): Settlement and Retention of Claims and Causes of Actions**

### i. The Releases, Exculpation, and Injunction Provisions are Proper

#### (1) Debtor Releases

66. As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 10.5 of the Plan sets forth certain releases by the Debtors (the "Debtor Releases") and Section 10.6 of the Plan sets forth the Exculpation Provision.

67. The Debtor Releases are appropriate and should be approved. Claims held by a debtor against third parties are property of the estate and may be released in exchange for settlement, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. In accordance therewith, Section 10.5 of the Plan provides for releases by the Debtors of certain claims and Causes of Action that the Debtors and the Estates may have against the Released Parties (other than the Debtors). The standard for considering whether a debtor release is appropriate under section 1123(b)(3)(A) asks whether the release reflects a valid exercise of the debtor's business judgment and is fair, reason, and in the best interests of the estates. Thus, "[d]ebtors have considerable leeway in issuing releases of any claims the [d]ebtors themselves own."

68. Here, the Debtor Releases are in the best interests of the Estates and all stakeholders in these Chapter 11 Cases and reflects a sound exercise of the Debtors' business judgment, as the Debtor Releases are the result of good-faith negotiation, concessions, and compromises made by the Released Parties (other than the Debtors) in the process of formulating and supporting the Plan.

The Debtors assert that the Debtors' agreement to provide the Debtor Releases was proper to induce the participation of various stakeholders in the negotiations and compromises that ultimately led to the Plan. The Debtor Releases were negotiated at arm's length by sophisticated entities represented by counsel and are an integral part of, and inducement to enter into, the Plan. Moreover, the Debtor Releases are appropriately circumscribed to carve out any claims for gross negligence, fraud, or willful misconduct.

69.    Accordingly, for the reasons set forth above, the Debtor Releases reflect the sound and reasonable exercise of the Debtors' business judgment, are in the best interests of the Estates, and should be approved pursuant to section 1123(b)(3)(A) and (6) of the Bankruptcy Code.

**(2) Discharge**

70.    The discharge provision set forth in Section 10.3 of the Plan (the "Discharge Provision") is necessary to implement and enforce the Plan's Releases and Exculpation Provision, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors or Reorganized Debtors on account of such entities' Claims or Interests. As such, the Discharge Provision is a key provision of the Plan because it enforces the release and exculpation provisions that are centrally important to the Plan. As such, the Discharge Provisions should be approved so that the Plan can be effectuated and implemented successfully.

**(3) Exculpation**

71.    Furthermore, as discussed in detail above, the Exculpation Provisions are fully justifiable and appropriate, and comply with applicable law.

**ii. Retention of Causes of Action and Reservation of Rights**

72.    Section 1123(b)(3)(B) of the Bankruptcy Code permits a Chapter 11 plan to provide for the retention and enforcement of any claim or interest by the debtor, a trustee, or a

22

representative of the estate. Section 10.7 of the Plan provides that Causes of Action will vest in the Reorganized Debtors on the Effective Date. Accordingly, the Plan is consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

**4. The Plan Complies with Section 1123(b)(5): Modification of Rights**

73.    Section 1123(b)(5) of the Bankruptcy Code permits a plan to modify or leave unaffected the rights of holders of any class of claims. In accordance with section 1123(b)(5) of the Bankruptcy Code, the Plan modifies or leaves unaffected the rights of Holders of Claims and Interests in each Class. Thus, the Plan complies with section 1123(b)(5).

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court confirm the Plan pursuant to section 1129 of the Bankruptcy Code and overrule all Objections, if any, thereto.

Dated: June 21, 2026

**DAVIDOFF HUTCHER & CITRON LLP**

By: <u>Robert L. Rattet</u>
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
Telephone: (914) 381-7400
Email:     rlr@dhclegal.com
    cmp@dhclegal.com
    jdm@dhclegal.com

*Attorneys for Debtors and Debtors in Possession*