DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 381-7400
Robert L. Rattet, Esq.
Craig M. Price, Esq.
John D. Molino, Esq.

*Hearing Date:* June 25, 2026
*Hearing Time:* 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:

SOUND VISION CARE, INC. et. al.,

Debtors[1].

------------------------------------------------------------------x

Chapter 11 Cases

Case No. 25-72421 (LAS)
(Jointly administered)

### DECLARATION OF JEFFREY WILLIAMS, JR. IN SUPPORT OF ENTRY OF AN ORDER CONFIRMING THE DEBTORS' FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

I, Jeffrey Williams, Jr., declare as follows, under penalty of perjury:

1.      I am over the age of eighteen (18) and am competent to testify to the matters set forth herein.

2.      I am the President, principal, and sole owner of Sound Vision Care, Inc. and the other above-referenced debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). I am the co-proponent of the Debtors' *Fifth Amended Chapter 11 Plan*, dated June 12, 2026 [ECF Docket No. 460] (as may be amended, the "Plan"). I submit this declaration (the "Declaration") in support of confirmation of the Plan

---

[1]    The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Sound Vision Care, Inc. (0693), (ii) SVC of Coram, LLC (7727), (iii) SVC of East Setauket, LLC (4510), (iv) SVC of Fresh Meadows, LLC (4333), (v) SVC of Manhasset, LLC (7234), (vi) SVC of Riverhead, LLC (9996), (vii) SVC of Southold, LLC (4232), and (viii) SVC of Murray Hill, LLC (8674). The Debtors' mailing address is 1224 Ostrander Avenue, Riverhead, NY 11901.

1

proposed by the Debtors under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code").

3.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtors' books and records and other relevant documents, including the Plan, the *Third Amended Disclosure Statement for Debtors' Third Amended Chapter 11 Plan* [ECF No. 399] (the "Disclosure Statement"), the post-confirmation cash flow projections, as amended, and the liquidation analysis. Any opinions set forth herein are based on my experience and knowledge of the Debtors' financial condition and/or information and materials that the Debtors' professional advisors, including Davidoff Hutcher & Citron LLP ("DHC") and CBIZ Forensic Consulting Group , LLC ("CBIZ"), have supplied to me. If I were called to testify as a witness in this matter, I would testify to the facts set forth herein.

4.      The Plan provides for, among other things: (a) reinstatement of the Secured Claims in Classes 2 (U.S. Eagle Secured Claims), 3 (SBA Secured Claims), 4 (Flushing Bank Secured Claims), and 5 BOA Secured Claims) with payments to recommence on non-accelerated prepetition terms, subject to certain minor modifications negotiated with such creditors; (b) payment in full of Allowed Administrative Claims (including Professional Fee Claims via the Professional Fee Escrow) and Priority Non-Tax Claims as required by the Bankruptcy Code; (c) payment to Holders of Allowed General Unsecured Claims in Class 6 (including MCA Claims, as resolved) of twenty percent (20%) of the amount of their Allowed Claims, structured as an initial distribution of five percent (5%) within thirty (30) days after the Effective Date and semi-annual distributions of five percent (5%) thereafter for eighteen (18) months beginning six (6) months from the Effective Date, in full and final satisfaction of such Claims; and (d) retention of Interests in Class 7 by the existing equity Holders in exchange for a Three Hundred Thousand

2

Dollar ($300,000) capital contribution (the "Plan Contribution") to the Reorganized Debtors, payable in three (3) installments of One Hundred Thousand Dollars ($100,000) each—shortly after the Effective Date, within six (6) months of the Effective Date, and within one (1) year of the Effective Date.

5.      As set forth below, I am advised, and I believe that the Plan satisfies all the applicable provisions of the Bankruptcy Code. Accordingly, I believe the Plan should be confirmed.

**COMPLIANCE WITH THE BANKRUPTCY CODE**

**A.  Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

6.      I believe the Plan complies with the applicable provisions of the Bankruptcy Code including, but not limited to, the following:

A.  Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). Article III of the Plan designates seven (7) Classes of Claims and Interests. I am familiar with the classification of Claims and Interests in the Plan and believe that such classification system is based upon the legal nature and relative rights of the Claims and Interests and is not proposed for any improper purposes. Each Class contains only Claims and Interests that are substantially similar to other Claims and Interests therein. Specifically, the Classes are: Class 1 (Priority Non-Tax Claims – Unimpaired); Class 2 (U.S. Eagle Secured Claims – Impaired); Class 3 (SBA Secured Claims – Impaired); Class 4 (Flushing Bank Secured Claims – Impaired); Class 5 (BOA Secured Claims – Impaired); Class 6 (General Unsecured Claims, including MCA Claims – Impaired); and Class 7 (Interests – Unimpaired).

B.  Specific Treatment of Unimpaired Claims (11 U.S.C. §§ 1123(a)(2)). Articles III and IV of the Plan specify whether each Class of Claims and Interests is Unimpaired under the Plan and set forth the treatment of such classes of Claims and Interests. Classes 1 and 7 are Unimpaired.

C.  Specified Treatment of Impaired Classes (11 U.S.C. §§ 1123(a)(3)). Articles III and IV of the Plan specify whether each Class of Claims and Interests is Impaired under the Plan and set forth the treatment of such classes of Claims and Interests. Classes 2, 3, 4, 5, and 6 are Impaired.

D.  No Discrimination (11 U.S.C. §§ 1123(a)(4)). Pursuant to the Plan, the treatment of each Claim or Interest in each Class is the same as the treatment of each other

3

Claim or Interest in such Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest.

E. <u>Implementation of the Plan (11 U.S.C. §§ 1123(a)(5))</u>. Article V of the Plan, as well as various other provisions of the Plan, provides adequate and proper means for implementation of the Plan. The Plan shall be funded from: (a) the Debtors' ongoing cash flows from operations as a going concern, (b) the $300,000 Plan Contribution from the Holders of Interests, and (c) reinstatement of the secured debt obligations on their contractual terms. The Reorganized Debtors shall continue to operate the optometry practices, assume executory contracts and unexpired leases as provided, and make distributions via a Disbursing Agent.

F. <u>Nonvoting Equity Securities (11 U.S.C. §§ 1123(a)(6))</u>. The Plan does not contemplate the issuance of non-voting equity securities.

G. <u>Continuation of Existing Corporate Officers and Directors (11 U.S.C. §§ 1123(a)(7))</u>. Following confirmation of the Plan, the Debtors will continue to be managed and operated by their sole owner, Dr. Jeffrey Williams, Jr., as disclosed in Exhibit D to the Plan and the Disclosure Statement. The manner of selection and continuation of management is consistent with the interests of creditors and equity security holders and with public policy.

H. <u>Impairment of Classes (11 U.S.C. §§ 1123(b)(1))</u>. Articles III and IV of the Plan impair or leave unimpaired, as the case may be, each Class of Claims and Interests under the Plan. Specifically, Classes 1 and 7 are Unimpaired by the Plan, and Classes 2 through 6 are Impaired by the Plan.

I. <u>Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. §§ 1123(b)(2))</u>. Article VIII of the Plan provides that the Debtors' Executory Contracts and Unexpired Leases shall be assumed as of the Effective Date, except for executory contracts and unexpired leases that have been assumed or rejected before the Effective Date, are the subject of a motion to assume or reject pending on the Effective Date, or are rejected pursuant to the Plan. Claims for rejection damages shall be treated as Class 6 General Unsecured Claims.

J. <u>Section 1123(b)(6) of the Bankruptcy Code – Injunction, Releases, Exculpation, etc.</u> The Plan includes a discharge pursuant to section 1141(d) of the Bankruptcy Code, exculpation provisions protecting the Debtors, their professionals (including DHC and CBIZ), and other parties critical to the formulation and pursuit of the Plan from liability for acts or omissions in connection with the negotiation, preparation, pursuit of confirmation, consummation, and administration of the Plan (other than liability resulting from gross negligence, willful misconduct, or breach of fiduciary duty as determined by a Final Order), and related injunction provisions. These provisions were an integral component of the Plan. Based on my knowledge of the processes, these provisions are fair and reasonable and necessary to the realization of a successful Plan confirmation process and the value realized thereunder.

K. Identification of Plan Proponents (Fed. R. Bank. P. 3016(a)). As required by Bankruptcy Rule 3016(a), the Plan is dated June 12, 2026, and identifies the Debtors as the Plan Proponents.

**B. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

7.    To the best of my knowledge, the Debtors have complied with the Bankruptcy Code in proposing the Plan. The Plan was formulated after good-faith, arms'-length negotiations with the Debtors' secured creditors (U.S. Eagle Federal Credit Union, SBA, Flushing Bank, and Bank of America) and the New York State Department of Taxation and Finance. These negotiations resulted in minor, non-material modifications reflected in the Fourth Amended Plan that do not adversely affect the treatment of any Class of Claims. The modifications resolved potential objections and facilitated the consensual confirmation of the Plan. Solicitation of votes was conducted in accordance with the Court's Amended Order entered May 6, 2026 [ECF No. 414] (the "Disclosure Statement & Scheduling Order"), the Bankruptcy Rules, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York.

**C. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(3))**

8.    To the best of my knowledge, the Debtors have proposed the Plan in good faith and not by any means forbidden by law. The Debtors, as the Plan proponents, have acted in good faith in the negotiation and formulation of the Plan to maximize creditor recoveries, preserve the going-concern value of the Debtors' multi-location optometry practice business, and achieve a feasible reorganization.

**D. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(4))**

9.    Any payment made, or to be made, by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, outside the ordinary course of business, has been approved by, or is subject to the approval of, the Court as reasonable. Professional compensation is subject to the

5

procedures set forth in the Plan, including the Professional Fee Escrow and final fee applications under sections 330 and 331 of the Bankruptcy Code.

### E. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(5))

10.     Section 1129(a)(5) provides that the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve as a director or officer and that the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the debtor. Following confirmation of the Plan, the Debtors will continue to be managed and operated by their sole owner, Dr. Jeffrey Williams, Jr. The identity and affiliations of post-confirmation management have been fully disclosed in the Plan, the Disclosure Statement, and Exhibit D to the Plan Supplement. There are no new directors or officers proposed to be appointed, and no issues regarding insider employment or retention arise under this provision.

### F. No Rate Changes (11 U.S.C. § 1129(a)(6))

11.     The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency. Therefore, section 1129(a)(6) is inapplicable.

### G. Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))

12.     Under the "best interests test," with respect to each impaired Class, each holder of a Claim or Interest against the Debtors either has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained had the Debtors been liquidated under chapter 7 of the Bankruptcy Code on such date (the "Liquidation Value").

13.     As set forth in the Liquidation Analysis (attached as Exhibit to the Disclosure Statement or Plan documents), as of April 30, 2026, the Debtors' assets available for distribution are estimated at approximately $3,795,000.00 (low case) to $5,443,000.00 (high case). Secured

Claims total approximately $5,700,000.00 (U.S. Eagle ~$4.9M prevailing, plus Bank of America and Flushing Bank). This results in a deficit to administrative claimants of approximately $257,000 to $1,905,000 before professional fees. After estimated Chapter 7 professional expenses ($150,000–$250,000) and Chapter 11 professional expenses ($700,000–$900,000), General Unsecured Creditors would receive little or no recovery in a Chapter 7 liquidation. In contrast, under the Plan: (a) Secured Claims in Classes 2–5 are reinstated and paid in full on their contractual terms, providing such creditors with the full value of their claims and collateral; (b) General Unsecured Claims in Class 6 receive a twenty percent (20%) recovery (approximately $560,000 on the $2.8 million claim base) through the structured distributions described above; and (c) the Reorganized Debtors continue as a going concern, preserving substantial enterprise value. All Impaired Classes voted to accept, or are deemed to have accepted, the Plan. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

### H. Acceptance of the Plan (11 U.S.C. § 1129(a)(8))

14.    As set forth in the *Declaration of Robert L. Rattet Regarding the Solicitation of Votes and Tabulation of Ballots Cast* (the "Voting Declaration"), attached to the Plan, all Classes that voted on the Plan—Classes 2 (U.S. Eagle Secured Claims), 4 (Flushing Bank Secured Claims), 5 (BOA Secured Claims), and 6 (General Unsecured Claims)—accepted the Plan by the requisite majorities under section 1126(c) of the Bankruptcy Code: more than one-half in number and at least two-thirds in amount of the Claims in each such Class that voted. For example, Class 2 received one timely Ballot accepting the Plan in the amount of $4,982,200.23, representing 100% acceptance in both number and amount. Moreover, Class 3 (SBA Secured Claims) was entitled to vote under the Plan but did not vote. Pursuant to the Plan, a Class entitled to vote on the Plan that does not vote, is deemed to have accepted the Plan. IN addition, the minor modifications in the

Fourth Amended Plan as against the Third Amended Plan are non-material and do not adversely affect treatment of any Class; accordingly, Ballots cast on the Third Amended Plan apply to and constitute acceptance of the Plan. Classes 1 and 7 are Unimpaired and are conclusively presumed to have accepted the Plan under section 1126(f). Accordingly, section 1129(a)(8) is satisfied.

**I.  Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))**

15.  Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the plan. The Plan provides for the required treatment as follows: (a) with respect to Administrative Claims (section 507(a)(1) and (2)), each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the Effective Date or as soon thereafter as is reasonably practicable (or upon such other terms as agreed), subject to the Professional Fee Escrow for Professional Fee Claims and final allowance procedures; (b) with respect to Priority Non-Tax Claims (Class 1, section 507(a)(3)–(7)), each Holder shall receive Cash equal to the Allowed amount on the Effective Date or as soon as practicable thereafter; and (c) with respect to Priority Tax Claims (section 507(a)(8)), Holders shall receive deferred Cash payments over a period not exceeding five (5) years after the date of assessment, of a value as of the Effective Date equal to the Allowed amount, plus interest as required under sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**J.  Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10))**

16.  All impaired Classes under the Plan (Classes 2, 3, 4, 5, and 6) have accepted the Plan by the requisite majorities under section 1126(c), or are deemed to have accepted the Plan. Therefore, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**K.  Feasibility (11 U.S.C. § 1129(a)(11))**

17.     The Debtors have analyzed the costs required to satisfy their obligations under the Plan and have concluded that they will have sufficient funds to accomplish this goal. As detailed in the post-confirmation cash flow projections and budgets (including the Combined DIP/Post-Confirmation Cash Flow Budget for Quarters Ended March 2026 through March 2028, with anticipated Effective Date on or about July 1, 2026, as updated in the Plan Supplement and Disclosure Statement exhibits), the Reorganized Debtors project aggregate cash receipts sufficient to cover all operating disbursements (payroll and related ~$424k–$485k per quarter, officer compensation, rent and occupancy, inventory purchases for frames/lenses, and overhead) while generating positive net cash flows from operations. These flows, together with the $300,000 Plan Contribution from Dr. Williams, are projected to fund: (a) reinstated debt service (*e.g.*, ~$137,000 quarterly to U.S. Eagle/SBA, plus contractual payments to Flushing Bank and Bank of America); (b) GUC distributions under the 20% recovery structure (~$140,000 in applicable quarters on the $2.8 million claim base); (c) administrative and priority claim payments; (d) U.S. Trustee fees; (e) real estate taxes per cash collateral order; and (f) other obligations. Cumulative cash balances are projected to remain positive throughout the period and to grow substantially (exceeding $3 million by early 2028 in the projections). The Plan is therefore feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.  Payment of Fees (11 U.S.C. § 1129(a)(12))**

18.     To the extent required, all fees arising under 28 U.S.C. § 1930 presented to date have been paid or will be provided for on the Effective Date, thereby satisfying section 1129(a)(12) of the Bankruptcy Code. The Debtors have filed, and will continue to file through the Effective Date, all required monthly operating reports with the United States Trustee for Region 2.

**M. Retiree Benefits (11 U.S.C. § 1129(a)(13))**

19.    The Debtors do not provide "retiree benefits" as such term is defined in section 1114 of the Bankruptcy Code. Therefore, section 1129(a)(13) is inapplicable and need not be addressed.

**N. Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**

20.    As the Debtors are not required to pay any domestic support obligation, section 1129(a)(14) is inapplicable and need not be addressed.

**O. Individual Debtor Requirements (11 U.S.C. § 1129(a)(15))**

21.    Section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Debtors, which are not individuals.

**P. No Unfair Discrimination, Plan is Fair and Equitable (11 U.S.C. § 1129(b))**

22.    All impaired Classes have voted to accept the Plan. Therefore, section 1129(b) is inapplicable. The Plan does not discriminate unfairly against any Class and provides fair and equitable treatment to all Classes.

**Q. Only One Plan (11 U.S.C. § 1129(c))**

23.    Other than the Plan and Plan Supplement, no plan has been filed in the Chapter 11 Cases, and the Debtors are not presently seeking confirmation of any plan other than the Plan. Therefore, the Plan complies with section 1129(c) of the Bankruptcy Code.

**R. Principal Purpose of Plan (11 U.S.C. § 1129(d))**

24.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**S.  Debtors' Injunction, Releases, Exculpation, and Discharge**

25.    Article XI (or applicable article) of the Plan provides for creditors and other parties to be enjoined from pursuing any Claim, Lien, Interest, or Liability against or in the Debtors or Reorganized Debtors that would otherwise be discharged under the Plan (the "Injunction"). The Plan provides for a discharge of the Debtors pursuant to section 1141(d) of the Bankruptcy Code upon the Effective Date (or upon completion of payments if applicable). The Plan also includes exculpation provisions for the Debtors, their professionals, attorneys, accountants, and other parties involved in the formulation, negotiation, preparation, pursuit of confirmation, consummation, and administration of the Plan and the Chapter 11 Cases, protecting such parties from liability except for gross negligence, willful misconduct, or breach of fiduciary duty as determined by Final Order. These provisions are integral to the Plan, fair and reasonable, and necessary to the successful reorganization and the value realized for stakeholders.

**CONCLUSION**

26.    Based on the foregoing, I believe that the Plan satisfies the requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed under section 1129 of the Bankruptcy Code.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: June 21, 2026
New York, New York

By:    /s/ Jeffrey Williams, Jr.
Jeffrey Williams, Jr.
President, Principal, and Sole Owner of the Debtors